Sherry B. BHALLI, Appellant,

v.

METHODIST HOSPITAL, Larry Mathis, Phil Robinson and Dr. Wadi Suki, Appellees.

No. 01–94–00366–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 12, 1995.

Rehearing Overruled April 20, 1995.

Erik R. Sunde, Houston, for appellant.

Douglas E. Hamel, Paul Stallings, Robert L. Ivey, Houston, for appellees.

Before O'CONNOR, MIRABAL and WILSON, JJ.

### OPINION

O'CONNOR, Justice.

Sherry B. Bhalli, plaintiff below and appellant here, appeals from a take-nothing summary judgment in her suit for tortious interference with contractual relations and intentional infliction of emotional distress. We affirm.

### Background

Bhalli was employed by Methodist Hospital as a renal dietitian in the Community Dialysis Unit. Dr. Suki is the Chief of the Renal Service and Director of the Community Dialysis Unit at Methodist. Suki is also a Professor of Medicine at Baylor College of Medicine. Methodist is the primary teaching hospital for the Baylor College of Medicine. We refer to the defendants collectively as the defendants.

In December of 1984, Bhalli became concerned about the quality of patient care in the dialysis unit. She met with Methodist's vice-president for patient services, Phil Robinson, and told Robinson that she felt that Suki was mismanaging the dialysis unit. Bhalli had also complained to Methodist's president and CEO, Larry Mathis, regarding other problems in the unit. Following these meetings, Bhalli claims that Suki treated her belligerently, and restricted her role in the dialysis unit in retaliation for her complaints. In August, 1985, Bhalli requested a transfer from the dialysis unit. In March 1986 she was transferred to cardiology, and she was terminated in August of 1990.

On August 20, 1992, Bhalli filed suit against Methodist, Mathis, and Robinson, alleging they had intentionally inflicted emotional distress on her. On November 3, 1992, Bhalli added Suki to the suit, alleging that he had intentionally inflicted emotional distress and had tortiously interfered with her employment relationship with Methodist by forcing her to leave the dialysis unit.

On January 27, 1994, the defendants filed a motion for summary judgment, contending (1) Bhalli's emotional distress claims were time-barred, (2) there was no proximate cause between any damages to Bhalli and any act of any defendant, and (3) Suki was the agent of Methodist and therefore as a matter of law could not have interfered with Bhalli's employment relationship with Methodist. The trial court granted a summary judgment on February 23, 1994, and Bhalli raises five points of error.

### Standard of review

■ Under Tex.R.Civ.P. 166a(c), a summary judgment is proper for a defendant if its summary judgment proof establishes, as a matter of law, there is no genuine issue of material fact concerning one or more of the essential elements of the plaintiff's cause of action. *Goldberg v. United States Shoe Corp.*, 775 S.W.2d 751, 752 (Tex.App.—Houston [1st Dist.] 1989, writ denied). A summary judgment for a defendant that disposes of the entire case is proper only if, as a matter of law, the plaintiff could not succeed upon any of the theories in its petition. *Kiefer v. Continental Airlines, Inc.*, 882 S.W.2d 496, 498 (Tex.App.—Houston [1st Dist.] 1994, n.w.h.). In reviewing the granting of a motion for summary judgment, this Court will

consider that all evidence which is favorable to the non-movant is true. *MMP, Ltd. v. Jones,* 710 S.W.2d 59, 60 (Tex.1986); *Goldberg,* 775 S.W.2d at 752. We will indulge every reasonable inference and doubt in favor of the non-movant. *Id.*

When, as in this case, a defendant moves for summary judgment on its own affirmative defense, the defendant has the burden of proving each element of its defense as a matter of law. *Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex.1984) (affirmative defenses of fraud and estoppel); *Kiefer,* 882 S.W.2d at 498 (affirmative defense of preemption). When the trial court grants a summary judgment without specifying the reasons, we will affirm if any of the theories asserted by the defendant have merit. *State Farm Fire & Cas. Co. v. S.S.,* 858 S.W.2d 374, 380 (Tex.1993); *Hardy Road 13.4 Joint Venture v. Med Ctr. Bank,* 867 S.W.2d 889, 892 (Tex.App.—Houston [1st Dist.] 1993, writ denied).

### Collateral estoppel

In point of error one, Bhalli argues that Suki's agency defense was fully litigated and determined in another proceeding, and, therefore, is barred by collateral estoppel. Bhalli did not present the trial court with any pleadings from the earlier litigation. Instead, Bhalli asks that, pursuant to Tex. R.Civ.Evid. 201, we take judicial notice of the "fact" that Suki's claims are collaterally estopped.

We are not able to do so. Tex. R.Civ.Evid. 201(b) allows us to take judicial notice of a fact that is not subject to reasonable dispute. The fact must be capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned. *First Nat'l Bank v. Jarnigan,* 794 S.W.2d 54, 61 (Tex.App.—Amarillo 1990, writ denied). A court cannot take judicial notice of the records of another court in another case unless a party provides proof of those records. *See Anders v. Mallard & Mallard, Inc.,* 817 S.W.2d 90, 94–95 (Tex.App.—Houston [1st Dist.] 1991, no writ) (movant for summary judgment asserting res judicata should have attached certified copies of the petition and judgment from the earlier suit).

We overrule Bhalli's point of error one.

### Agency

In point of error two, Bhalli argues that the trial court erred in determining that there was no genuine issue of material fact whether Suki was an agent of Methodist.

Suki's primary summary judgment defense against Bhalli's tortious interference claim was that Suki was acting as an agent for Methodist, and therefore he could not have interfered with her employment relationship with Methodist. Bhalli does not challenge Suki's *defense* as an agent; Bhalli challenges Suki's *status* as an agent.[1] Her argument is that Suki did not prove by summary judgment evidence that he was Methodist's agent.

An agent is one who is authorized by another to transact some business for the principal; the relationship is a consensual one between two parties by which one party acts on behalf of the other, subject to the other's control. *Neeley v. Intercity Mgmt. Corp.,* 732 S.W.2d 644, 646 (Tex.App.—Corpus Christi 1987, no writ). Whether an agency relationship exists is a question of fact unless the evidence established the relationship as a matter of law. *Jorgensen v. Stuart Place Water Supply Corp.,* 676 S.W.2d 191, 194 (Tex.App.—Corpus Christi 1984, no writ). Here, Suki had the burden of proving agency as part of his affirmative defense. *Montgomery,* 669 S.W.2d at 310–11; *Kiefer,* 882 S.W.2d at 498.

---

1. The privilege of legal justification in the interference of a contractual relationship is an affirmative defense on which the defendant has the burden of proof. *Victoria Bank & Trust Co. v. Brady,* 811 S.W.2d 931, 939 (Tex.1991); *Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex. 1989). Under this defense, a person is privileged to interfere with another's contract (1) if it is done in a bona fide exercise of his own rights or (2) if he has an equal or superior right in the subject matter to that of the other party. *Sterner,* 767 S.W.2d at 691. In this appeal, the only issue Bhalli raises regarding tortious interference with contract is whether Suki was an agent of Methodist. Bhalli does not raise any issues regarding Suki's good faith or superior right.

The summary judgment evidence established that Suki was employed by Baylor College of Medicine. The evidence also established that Baylor and Methodist had an agreement that members of Baylor's faculty were "affiliated" with Methodist Hospital; and that Suki was Chief of Nephrology and Director of the Dialysis Unit at Methodist. The nature of this affiliation, as it applied to Suki, is the central issue. Bhalli argues there was at least a fact issue as to whether Suki was an agent of Methodist.[2] Suki, on the other hand, contends that the evidence proved as a matter of law that he was an agent of Methodist. We agree with Suki.

The following evidence established, as a matter of law, that Suki was the agent of Methodist: Suki was Chief of Nephrology and Director of the Dialysis Unit at Methodist; he was subject to the rules and regulations of Methodist; he reported to Methodist's Vice–President for Patient Services and to its Trustees; Suki received compensation from Methodist; Suki had the responsibility to oversee employees in his section, including the power to hire and fire them.

Bhalli relies on the fact that the evidence was unclear as to whether Suki received compensation directly from Methodist, or whether Methodist paid Baylor, which in turn paid Suki. Whether Suki was paid directly by Methodist is not dispositive, because Suki could have been an agent of both Baylor and Methodist. There was ample evidence that Suki was subject to the control of Methodist. This was proved by Bhalli's own admission, that Suki, as the Medical Director of the Dialysis Unit, was responsible for the supervision of employees in the unit.

On this record, Suki established he was an agent of Methodist. Bhalli did not raise a fact issue to dispute his status as an agent.

We overrule Bhalli's point of error two.

## Intentional infliction of emotional distress

■ In point of error four, Bhalli argues that the trial court erred in granting summary judgment as to Bhalli's claim of intentional infliction of emotional distress.

■ To prevail in a suit for intentional infliction of emotional distress, the plaintiff must show: (1) intentional or reckless conduct; (2) that is extreme or outrageous; (3) that caused emotional distress; (4) that was severe in nature. *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex.1993). In its motion for summary judgment, Methodist argued that Bhalli's claims were barred by the statute of limitations.

In their brief, the defendants admit they were unable to find a Texas case defining the limitations period for intentional infliction of emotional distress. The court in *Twyman* referred to the claim as one for personal injury, which would subject the plaintiff to the two-year limitations period in Tex.Civ. Prac. & Rem.Code § 16.003(a). *Twyman*, 855 S.W.2d at 625. We hold that the applicable limitations period for a claim of intentional infliction of emotional distress is two years from the accrual of the cause of action.

Bhalli filed this case on August 20, 1992. Therefore, she must have alleged actionable conduct by the defendants that occurred after August 20, 1990. The defendants contend that Bhalli admitted in her affidavit that no actionable conduct by Methodist occurred after August 20, 1990. In her affidavit attached to her response to the motion for summary judgment, Bhalli identified acts in 1984 through 1986 that support her causes of action. Thus, by her own summary judgment proof, Bhalli's claim for intentional infliction must be based on conduct by Mathis, Robinson, or Suki that occurred no later than 1986.

■ In her brief, Bhalli attempts to skirt this problem by arguing that the defen-

---

**2.** Alternatively, Bhalli argues that Suki was merely an independent contractor of Methodist. In support of this argument Bhalli asserts that Suki had full control over the care of the patients, and that the input from Methodist was "de minimus at best." However, Bhalli does not direct us to evidence in the record to support these assertions. Moreover, Bhalli's own deposition testimony contradicts this argument, because she stated that she complained to Methodist administrators when she became concerned about the quality of patient care in the dialysis unit. This demonstrates that Bhalli regarded Suki as subject to Methodist's control.

dants engaged in a series of acts over a period of time, committing a "continuing tort" that immunized her from the statute of limitations. This argument is without merit. While it is true that Texas has recognized the continuing tort doctrine, e.g. *Twyman v. Twyman,* 790 S.W.2d 819, 821 (Tex.App.— Austin 1990), *rev'd on other grounds,* 855 S.W.2d 619 (Tex.1993), the doctrine only applies if the last tortious act falls within the limitations period. *McConnell v. Thomson Newspapers, Inc.,* 802 F.Supp. 1484, 1493 (E.D.Tex.1992). In *Twyman,* for example, which Bhalli herself relies on, the court of appeals noted that "in a continuing tort case, the cause of action is not complete and does not accrue until the tortious acts have ceased." *Twyman,* 790 S.W.2d at 821. The corollary to this statement is that once the tortious acts have ceased, the cause of action accrues. As Bhalli admits in her brief, some of the federal courts hold the doctrine does not apply to a tortious act that occurs outside the limitations period when only the consequences continue into the limitations period. *See, e.g., McGregor v. Louisiana State Univ. Bd. of Supr's,* 3 F.3d 850, 866–67 (5th Cir. 1993).

Because Bhalli did not raise a fact question about any act of the defendants after 1986, the continuing tort doctrine is not applicable to the facts of this case. We overrule Bhalli's point of error four.

## Other Points of Error

In point of error three, Bhalli argues that the trial court erred in finding there were no issues of fact regarding proximate cause of her damages. In point of error five, Bhalli argues that the trial court erred in holding that the defendants' conduct was not extreme or outrageous. Because of our disposition of the limitations issue, it is not necessary for us to reach these issues.

We affirm the judgment of the trial court