Victor M. ZURITA, D.D.S., MS, Individually and d/b/a Heights Medical and Dental Clinic and Ana Zurita, Appellants,

v.

Fernando LOMBANA, M.D. and Houston Medical & Dental Center Corp., Appellees.

No. 14–08–00263–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Sept. 30, 2010.

Patrice M. Barron, Houston, for appellants.

Jeff Murphrey, Leann Kay, J. Joshua Fitzgerald, Houston, for appellees.

Panel consists of Chief Justice HEDGES and Justices SEYMORE and BROWN.

## OPINION

JEFFREY V. BROWN, Justice.

Victor M. Zurita, individually and doing business as Heights Medical and Dental Clinic, and his wife Ana Zurita, the plaintiffs below, appeal a take-nothing judgment on their lawsuit against Fernando Lombana and Houston Medical & Dental Center Corp., in which they asserted malicious prosecution, tortious interference, business disparagement, and other claims. The Zuritas raise eight issues: (1) the district court's self-transfer of the case to the successor judge was void or reversible error; (2) the court erred in granting summary judgment on Ana Zurita's claim of intentional infliction of emotional distress; (3) the court erred in granting summary judgment on Dr. Zurita's business-disparagement and tortious-interference-with-prospective-business-relations claims; (4) the evidence is legally and factually insufficient to support the jury's failure to find malicious civil prosecution; (5) the court erred in directing a verdict on conspiracy; (6) the court erred in refusing to submit

the Zuritas' requested jury questions; (7) the court erred in excluding certain evidence as irrelevant; and (8) the judgment should be reversed and remanded based on incurable jury argument. For the reasons stated below, we affirm.

I

The proceedings below are extensive and complicated. The following briefly summarizes the factual and procedural background between the parties. Additional facts will be discussed as needed in the analysis of each issue.

Victor Zurita, D.D.S., M.S., is a dentist and owner of a property in the Heights known as the Yale Street Clinic. In 1996, Zurita leased a portion of the Yale Street Clinic's space to Fernando Lombana, M.D. In 1999, a dispute arose over the terms of the lease agreement, and Zurita eventually evicted Lombana. On September 30, 1999, Lombana sued Zurita, and Zurita answered and asserted counterclaims. The Honorable Martha Hill Jamison of the 164th District Court was the trial judge.

Judge Jamison granted Lombana's motion for partial summary judgment on liability and his motion for summary judgment on Zurita's breach-of-contract counterclaim. Judge Jamison also struck as untimely Zurita's self-described "compulsory counterclaims" for defamation and tortious interference with business relationships. A jury heard the issue of Lombana's damages and awarded more than $1.6 million. Zurita appealed. In the interim, Lombana took action to enforce the judgment, including obtaining a temporary restraining order prohibiting Zurita from transferring assets. Zurita, unable or unwilling to file a supersedeas bond, filed for bankruptcy. According to the record, the bankruptcy court entered an order allowing the appeal to go forward.

The First Court of Appeals then reversed and rendered judgment in favor of Zurita. See Zurita v. Lombana, No. 01-01-01040-CV, 2003 WL 21027140 (Tex. App.-Houston [1st Dist.] May 8, 2003, pet. denied). The court's review was limited to Zurita's and Lombana's motions for summary judgment on liability. In particular, the court considered whether Lombana had a right to exercise the extension option in the lease or whether he had forfeited that right by subleasing a portion of the premises. Id. at *3. Based on the lease's extension option, which expressly provided that "[Lombana's] rights under this option shall terminate if ... [Lombana] assigns its interest in the lease or sublets any portion of the premises," the court held Lombana was not entitled to exercise the option after he subleased a portion of the premises to a pharmacist without Zurita's written consent. Id. at *3–4. The court reversed the judgment and rendered judgment that Lombana take nothing from Zurita. Id. at *4. Zurita then had the bankruptcy dismissed.

In 2001, before the jury verdict in the original lawsuit, Zurita filed a separate action against Lombana and others alleging tortious interference with business relationships. This is the lawsuit before us. Like the first one, this lawsuit was in Judge Jamison's court. Zurita later amended his petition several times, adding his wife Ana as a party and additional claims. In 2005, Judge Jamison granted Lombana summary judgment on several of the Zuritas' claims, but denied summary judgment on Dr. Zurita's malicious-prosecution claim. Shortly after that, Judge Jamison recused herself, and in the same order, in her capacity as administrative judge of the civil trial division, transferred the lawsuit to another district court.

Now before the Honorable Levi Benton in the 215th District Court, the parties

filed amended motions for summary judgment, and Judge Benton granted Lombana summary judgment on several of the Zuritas' claims. Dr. Zurita then went to trial before a jury on his remaining claims of malicious prosecution, intentional infliction of emotional distress, and conspiracy. The trial court granted a directed verdict on the civil-conspiracy claim, and the jury answered "no" to the remaining claims. Motions for new trial and for judgment n.o.v. were overruled, and this appeal followed.

## II

In their first issue, the Zuritas contend Judge Jamison's transfer of the lawsuit to Judge Benton is void. The Zuritas argue that, because Judge Jamison recused herself, her subsequent transfer of the case to Judge Benton was improper and in violation of regional administrative rules and Harris County district court rules. They contend Judge Jamison was prohibited from taking any further action in the case, except for good cause, and she should have referred the case for reassignment by the presiding administrative regional judge. *See Dunn v. County of Dallas,* 794 S.W.2d 560, 563 (Tex.App.-Dallas 1990, no writ). They also suggest Judge Jamison recused herself because of impartiality, personal bias, or personal knowledge of disputed evidentiary facts concerning the proceeding. Specifically, the Zuritas point out that she had presided over the first case

involving the lease dispute, which was the subject of the malicious-prosecution claim in this case, and the Zuritas had alleged that Lombana and his counsel had obtained the judgment in the first case through fraud and improper practices. *See* Tex.R. Civ. P. 18(b)(2)(a), (b). They also point to an item in an order granting a motion in limine prohibiting any "statements, comments, references or inferences that Judge Jamison was in any way biased in favor of Dr. Lombana" or "that one of Dr. Lombana's lawyers utilized a nickname for the judge during the course of the proceedings" as evidence that "the judge had some sort of personal relationship with original plaintiff's counsel." [1]

Rule 3.2.5 of the rules of the civil trial division of the Harris County district courts provides that any case may be transferred from one court to another by written order of the administrative judge of the division. Further, Rule 3.2.7 provides that the administrative judge may transfer cases between courts or may assign cases from one court to another court for hearing due to illness, trial schedule, "or other sufficient reason." Here, Judge Jamison recused herself and referred the case to "the Administrative Judge of the Civil Trial Division for transfer to another court." Then, in her capacity as administrative judge, she transferred the case to

---

1. In their reply brief, the Zuritas make an additional argument that Judge Jamison should have been disqualified under the Texas Constitution and Due Process Clause of the Fourteenth Amendment. *See* U.S. Const. amend. XIV; Tex. Const. art. V, §§ 7, 11; *see also* Tex.R. Civ. P. 18b(1). Constitutional disqualification can be raised at any point in the proceeding. *Buckholts Indep. Sch. Dist. v. Glaser,* 632 S.W.2d 146, 148 (Tex.1982). The Zuritas contend Judge Jamison's participation in the earlier case, which became the subject of the Zuritas' malicious prosecution claim, evinced "the probability of actual bias … [that] is too high to be constitutionally tolerable." *Caperton v. A.T. Massey Coal Co., Inc.,* — U.S. —, 129 S.Ct. 2252, 2259, 173 L.Ed.2d 1208 (2009). We conclude, however, that the record does not reflect an unconstitutional potential for bias of the type that concerned the court in *Caperton, see id.* at 2262–64, or that the requirements for constitutional disqualification were met. *See McElwee v. McElwee,* 911 S.W.2d 182, 186 (Tex.App.-Houston [1st Dist.] 1995, pet. denied) (identifying sole grounds for constitutional disqualification which cannot be waived).

Judge Benton. She took no further action in the case.

We conclude that Judge Jamison's order assigning the case to another judge was not void. In reaching this conclusion we are guided by the supreme court's reasoning in *In re McKee*, 248 S.W.3d 164 (Tex. 2007) (per curiam). As here, the issue in *McKee* was the validity of a self-recused judge's subsequent assignment of the case as an administrative judge. *Id.* at 165. The court noted that "Texas Rule of Civil Procedure 18a(c) provides authority for such an assignment but only if [the judge's] order states 'good cause' for that action." *Id.* The court stated that "good cause" is ordinarily inherent in such administrative assignments. *Id.* Further, the court went on to determine that it would not issue mandamus absent "extraordinary circumstances" otherwise requiring the judge's recusal. *Id.* The court concluded that the self-recused judge need only revise his order to state that his assignment was a purely administrative act. *Id.*

 Here, Judge Jamison's order specified that she was recusing herself and referring the case to the administrative judge of the civil trial division for transfer to another court, and the transfer order is signed by Judge Jamison in her capacity as administrative judge of the civil trial division. Thus, it is apparent on the face of the order that the transfer was a purely administrative act. *See id.* Further, the record does not reflect any "extraordinary circumstances" that would have called for

Judge Jamison's recusal.[2] We therefore conclude that her order is not void.

## III

In their second and third issues, the Zuritas contend the trial court erred in granting summary judgment on Ana's intentional-infliction-of-emotional-distress claim and Dr. Zurita's business-tort claims. We address each in turn.

## A

We review the trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex.2005); *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 215 (Tex.2003). Here, the appellees moved for summary judgment on both traditional and no-evidence grounds, and the Zuritas moved for summary judgment only on no-evidence grounds. *See* Tex.R.App. P. 166a(c), 166a(i).

The party moving for a traditional summary judgment has the burden to show that no material fact exists and that it is entitled to summary judgment as a matter of law. Tex.R.App. P. 166a(c); *M.D. Anderson Hosp. & Tumor Inst. v. Willrich,* 28 S.W.3d 22, 23 (Tex.2000) (per curiam). To be entitled to traditional summary judgment, a defendant must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Am. Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 425 (Tex.1997). Evidence is conclusive

---

**2.** Moreover, recusal may be waived if it is not raised by a proper motion. *McElwee,* 911 S.W.2d at 186. The Zuritas complain they had no notice that Judge Jamison selected Judge Benton, but the complained-of order was in the court's file, and the Zuritas certainly were aware that Judge Jamison had served as the judge in the earlier case upon which their malicious-prosecution claim was

based. The Zuritas never moved to recuse Judge Jamison for any perceived bias, impartiality, or other reason until after the case had been tried to an adverse result before Judge Benton. Therefore, the Zuritas have waived any complaint that Judge Jamison should have been recused, and have likewise waived any complaint regarding her assignment of the case to Judge Benton.

only if reasonable people could not differ in their conclusions. *City of Keller v. Wilson,* 168 S.W.3d 802, 816 (Tex.2005). Once the defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the plaintiff to come forward with competent controverting evidence raising a genuine issue of material fact. *Centeq Realty, Inc. v. Siegler,* 899 S.W.2d 195, 197 (Tex. 1995).

In a no-evidence summary judgment, the movant must specifically state the elements as to which there is no evidence. *Rivers v. Charlie Thomas Ford, Ltd.,* 289 S.W.3d 353, 357–58 (Tex.App.-Houston [14th Dist.] 2009, no pet.); *Walker v. Thomasson Lumber Co.,* 203 S.W.3d 470, 473–74 (Tex.App.-Houston [14th Dist.] 2006, no pet.). The trial court must grant the motion unless the non-movant can point out evidence that raises a fact issue on the challenged elements. *See* Tex.R. Civ. P. 166a(i); *Hamilton v. Wilson,* 249 S.W.3d 425, 426 (Tex.2008).

In reviewing either a no-evidence or traditional summary-judgment motion, we must take as true all evidence favorable to the non-movant and draw every reasonable inference and resolve all doubts in favor of the non-movant. *Mendoza v. Fiesta Mart,* 276 S.W.3d 653, 655 (Tex.App.-Houston [14th Dist.] 2008, pet. denied). When both parties move for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law. *City of Garland v. Dallas Morning News,* 22 S.W.3d 351, 356 (Tex.2000). When the trial court grants one motion and denies the other, we review the summary judgment evidence presented by both parties and determine all questions presented. *Id.* The reviewing court should render the judgment that the trial court should have rendered or reverse and remand if neither party has met its summary judgment burden. *Id.*

**B**

In their second issue, the Zuritas contend the trial court erred in granting summary judgment on Ana's intentional-infliction-of-emotional-distress claim because the appellees failed to conclusively prove their affirmative defense of limitations. *See Rhone–Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 223 (Tex.1999) (stating that a defendant moving for summary judgment on the affirmative defense of limitations has the burden to conclusively establish that defense). Additionally, the Zuritas also claim the allegedly tortious conduct was a continuing tort. *See Twyman v. Twyman,* 790 S.W.2d 819, 821 (Tex.App.-Austin 1990), *rev'd on other grounds,* 855 S.W.2d 619 (Tex.1993) (stating that a continuing tort involves a course of conduct which over a period of years causes injury).[3] In its order, the trial court specifically found that "Dr. Lombana's actions do not constitute a continuing tort. Only acts occurring during the relevant statute of limitations period maybe

---

**3.** The Zuritas also appear to request that the summary judgment be reversed and remanded because the "record is in disarray." But the Zuritas make no argument and cite no authority to support this request. Instead, they refer this court to a motion incorporated by reference. A party may not simply incorporate by reference its arguments at the trial level into its brief; a party must argue each claim of error on appeal. *Allen v. United of Omaha Life Ins. Co.,* 236 S.W.3d 315, 325 (Tex.App.-Fort Worth 2007, pet. denied); *Guerrero v. Tarrant County Mortician Servs. Co.,* 977 S.W.2d 829, 832–33 ("Were we to approve of this tactic, appellate briefs would be reduced to a simple appellate record reference to a party's trial court arguments. Additionally, this would be an open door for parties to circumvent the appellate brief page limitations."). Therefore, the Zuritas have waived this request.

maintained." Further, the court granted summary judgment "as to all causes of action for which the statute of limitations expired prior to their filing, including all claims asserted by Ana Zurita." [4]

### 1

■■■ To prevail on a claim for intentional infliction of emotional distress, a plaintiff must establish that (1) the defendant acted intentionally or recklessly; (2) its conduct was extreme and outrageous; (3) its actions caused her emotional distress; and (4) the emotional distress was severe. *Kroger Tex. Ltd. P'ship v. Suberu,* 216 S.W.3d 788, 796 (Tex.2006); *Tiller v. McLure,* 121 S.W.3d 709, 713 (Tex. 2003) (per curiam). An action that is intentional, malicious, or even criminal does not, standing alone, mean that it is extreme or outrageous for purposes of intentional infliction of emotional distress. *Brewerton v. Dalrymple,* 997 S.W.2d 212, 215–16 (Tex.1999). The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 216. It is for the court to determine in the first instance whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery. *Id.*

■■■ Under Texas law, an intentional-infliction-of-emotional-distress claim must be brought within two years from the date the cause of action accrued. *See* Tex. Civ. Prac. & Rem.Code Ann. § 16.003; *Bhalli v. Methodist Hosp.,* 896 S.W.2d 207, 211 (Tex.App.-Houston [1st Dist.] 1995,

writ denied). Generally, a cause of action accrues when a wrongful act causes an injury. *Childs v. Haussecker,* 974 S.W.2d 31, 36 (Tex.1998). The continuing-tort doctrine is an exception courts of appeals have used to toll limitations until the last act of intentional infliction occurs. *See Creditwatch, Inc. v. Jackson,* 157 S.W.3d 814, 816 n. 8 (Tex.2005) (noting that the supreme court has neither endorsed nor addressed the continuing-tort doctrine). It applies to tortious acts inflicted over a period of time and repeated until desisted, and each day creates a separate cause of action. *Two Pesos, Inc. v. Gulf Ins. Co.,* 901 S.W.2d 495, 500 (Tex.App.-Houston [14th Dist.] 1995, no writ); *W.W. Laubach Trust/The Georgetown Corp. v. The Georgetown Corporation/W.W. Laubach Trust,* 80 S.W.3d 149, 159 (Tex.App.-Austin 2002, pet. denied). The doctrine only applies, however, if the last tortious act falls within the limitations period. *Bhalli,* 896 S.W.2d at 212.

### 2

Ana joined Dr. Zurita's lawsuit in March 2004 asserting that the appellees' actions caused her to suffer a miscarriage. Ana testified that she miscarried in July 2001, more than two years before she asserted her claim. The Zuritas contend Ana's claim is not barred, however, because the appellees' conduct constitutes a continuing tort that tolls the statute of limitations. The Zuritas contend the evidence showed "death threats to the Zurita family, trespass onto and vandalism of their lake house, and oppressive extended litigation brought in bad faith [and] continuing through issuance of mandate 12/8/03."

---

**4.** The summary-judgment order disposing of Ana's intentional-infliction-of emotional-distress claim was signed December 20, 2005, by Judge Jamison. After the case was transferred to Judge Benton, the parties amended their motions for summary judgment and

Judge Benton ruled on them on February 2, 2007. Judge Benton's order included the following in a footnote: "The December 20, 2005 order issued by the 164th District Court unequivocally disposes of all claims asserted by Mrs. Ana Zurita."

On this record, we decline to apply the continuing-tort doctrine to Ana's claim. We need not determine whether the alleged instances of death threats, trespass, and vandalism constitute a continuing tort, because even if they did, there is no evidence that any of these alleged acts occurred within two years of the date Ana first asserted her claim. *See Bhalli,* 896 S.W.2d at 211–12.

Further, the appellees' prosecution of the original lawsuit does not constitute evidence of a continuing tort that continued through the issuance of mandate as the Zuritas contend. Conduct associated with asserting a legal right, such as bringing a lawsuit, cannot be extreme and outrageous. *See Klein & Assocs. Political Relations v. Port Arthur Indep. Sch. Dist.,* 92 S.W.3d 889, 898 (Tex.App.-Beaumont 2002, pet. denied) (holding that, as a matter of law, school district's lawsuit did not constitute extreme and outrageous conduct sufficient to support a cause of action for intentional infliction of emotional distress even though suit had no merit); *cf. Wornick Co. v. Casas,* 856 S.W.2d 732, 735 (Tex.1993) (defendant's exercise of its legal right to terminate at-will employee cannot constitute outrageous conduct as a matter of law). Therefore, the appellees met their summary judgment burden to demonstrate that Ana's claim is barred by the statute of limitations as a matter of law.[5]

We overrule the Zuritas' second issue.

## C

In their third issue, the Zuritas contend the court erred in granting summary judgment on Dr. Zurita's business-disparagement and tortious-interference-with-prospective-business-relations claims (the "business torts"). The trial court granted the appellees' traditional and no-evidence motions for summary judgment on all grounds asserted with respect to the business torts. Because we conclude that the trial court properly granted summary judgment on the ground of res judicata, we do not reach the other asserted grounds.

### 1

Res judicata is an affirmative defense. Tex.R. Civ. P. 94. The party claiming the defense must prove: (1) the claims asserted in this case arise out of the same subject matter of the previous suit; (2) the claims asserted in this suit were litigated or could have been litigated through the exercise of due diligence in the previous suit; and (3) there is a final judgment in the prior lawsuit. *Barr v. Resolution Trust Corp.,* 837 S.W.2d 627, 631 (Tex.1992). We apply a transactional approach to res judicata. *Id.* Under that approach, the subject matter of a suit is based on the factual matters that make up the gist of the complaint. *Id.* at 630. Any claim that arises out of those facts should be litigated in the same lawsuit. *Id.*

---

5. Even if we were to accept the allegation that the original lawsuit constituted malicious prosecution, Lombana's prosecution of that lawsuit and the alleged threat, trespass, and vandalism are distinct and unrelated acts that do not constitute a continuing course of conduct. *Compare Upjohn Co. v. Freeman,* 885 S.W.2d 538, 542 (Tex.App.-Dallas 1994, writ denied) (continued use of an injury-producing medication may be a continuing tort); *Twyman v. Twyman,* 790 S.W.2d 819, 821 (Tex. App.-Austin 1990), *rev'd on other grounds,* 855 S.W.2d 619 (Tex.1993) (husband repeatedly coerced wife over extended period to engage in sexual bondage activities); *with Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.,* 219 S.W.3d 563, 587–88 (Tex.App.-Austin 2007, pet. denied) (communications that were intermittent and irregular in nature did not represent a constant, continuous pattern of tortious conduct); *Cooper–Day v. RME Petroleum Co.,* 121 S.W.3d 78, 86–87 (Tex. App.-Fort Worth 2003, pet. denied) (holding discrete acts of alleged discrimination did not constitute a continuing tort). Thus, the Zuritas presented no summary-judgment evidence raising a genuine issue of material fact concerning their continuing-tort theory.

2

In the original lawsuit, on October 30, 2000, Zurita filed a "First Amended Original Answer and First Amended Compulsory Counterclaim" in which he sought to add two defendants and to assert claims of tortious interference with a business relationship and defamation in addition to a previously asserted compulsory counterclaim for breach of contract. Both claims were based in part on a September 25, 1999 letter Lombana sent to patients stating, "The new Clinic offers better DENTAL services with very well qualified and specialized certified dentists." The appellees moved to strike this pleading, asserting among other things that it was an untimely attempt to add new parties and claims before the December 4, 2000 trial setting. The trial court granted the appellees' motion and struck the pleading. The case then proceeded to a jury verdict and judgment for the appellees. As discussed above, the First Court of Appeals reversed the judgment and rendered a take-nothing judgment in favor of Zurita. In this lawsuit, the Zuritas alleged claims of business disparagement and tortious interference with prospective business relations. Like the compulsory counterclaims in the first lawsuit, both of these claims were based on the appellees' September 25, 1999 letter. The appellees moved for summary judgment, arguing that these claims arose out of the same facts and circumstances as the compulsory counterclaims asserted in the first lawsuit and therefore were barred by res judicata.

On appeal, the Zuritas contend that the underlying judgment should have no preclusive effect because it was reversed. As support, the Zuritas rely on *J.J. Gregory Gourmet Services, Inc. v. Antone's Import Co.*, 927 S.W.2d 31 (Tex. App.-Houston [1st Dist.] 1995, no writ). In *J.J. Gregory Gourmet Services,* the court stated that res judicata did not apply when the underlying summary judgment granted in favor of the defendants was reversed on appeal. *Id.* at 34. In that case, however, the summary judgment was reversed and remanded, and the court simply recognized that a summary judgment that is reversed and remanded is not a final judgment. *Id.* In contrast, in the present case the court of appeals reversed and rendered a final judgment in favor of Zurita. Thus, a final judgment exists for purposes of res judicata.

The Zuritas also invite us to decline to apply res judicata based on equity, citing *Citizens Ins. Co. v. Daccach*, 217 S.W.3d 430 (Tex.2007), and *Finger v. Southern Refrigeration Services, Inc.*, 881 S.W.2d 890, 895–96 (Tex.App.-Houston [1st Dist.] 1994, writ denied) (op. on reh'g). The Zuritas cite *Daccach* for the proposition that res judicata prevents relitigation of adjudicated claims and related matters that with the use of diligence should have been litigated. *Daccach*, 217 S.W.3d at 449. But the Zuritas' reliance on this general language is misplaced. In *Daccach*, a class representative argued res judicata should not apply to claims he abandoned because they were procedurally barred from litigation in the class action and thus could not be "litigated through diligence" in that action. *Id.* at 451. The supreme court, however, refused to create such an exception to the general principles of res judicata. *Id.* at 455. *Daccach* does not assist the Zuritas because it simply reaffirms the supreme court's adherence to the pragmatic application of the transactional approach to res judicata.

*Finger v. Southern Refrigeration Services, Inc.* is also distinguishable. In that case, the court discussed the application of collateral estoppel, not res judicata. *See Finger*, 881 S.W.2d at 895. Noting that "[t]he doctrine of collateral estoppel ap-

plies only to issues actually litigated in the earlier proceeding," the court held that collateral estoppel did not bar the claims of a plaintiff against whom the trial court had erroneously granted a directed verdict. *Id.* at 895–96. The court went on to state, "[e]ven if collateral estoppel applied in this case, we have the discretion to refuse to apply it if it would be unfair." *Id.* at 896 (citing *Scurlock Oil Co. v. Smithwick,* 724 S.W.2d 1, 7 (Tex.1986)). We decline to extend *Finger* to the broader doctrine of res judicata, which applies not only to claims that were actually litigated, but to claims that could have been litigated though the exercise of diligence in the earlier suit. *See Barr,* 837 S.W.2d at 631.

Although we have found no case directly on point, courts in analogous circumstances have upheld the application of res judicata to bar claims a party failed to diligently pursue. For example, in *Weiman v. Addicks–Fairbanks Road Sand Co.,* 846 S.W.2d 414 (Tex.App.-Houston [14th Dist.] 1992, writ denied), the appellant contended res judicata did not bar her claims in a second lawsuit because she was granted a non-suit without prejudice on similar claims in an earlier lawsuit. *Id.* at 421. This court disagreed, and held that the rules of procedure nevertheless applied and her claims in the second suit were barred by the compulsory-counterclaim rule. *Id.* Similarly, in *Genecov Group, Inc. v. Roosth Production Co.,* 144 S.W.3d 546 (Tex.App.-Tyler 2003, pet. denied), Genecov sought a declaration that certain oil and gas leases were valid and that it, rather than Roosth, was the lawful operator of the gas unit. *Id.* at 548. The parties agreed to arbitrate the question of whether the leases were valid, but the arbitrators were not asked to determine which party was the lawful operator. *Id.* After the arbitration was completed, Genecov filed a second lawsuit against Roosth, asking the court to find Genecov to be the lawful operator of the gas unit and for other relief. *Id.* at 550. The trial court granted Roosth's motion for summary judgment on Genecov's claims based on res judicata. *Id.* On appeal, the court rejected Genecov's contention that it should be able to have its operator issue determined in the second suit because the arbitrators did not consider it in the first suit. *Id.* at 553. The court held that res judicata barred Genecov's operator issue in the second lawsuit because it was based on the same facts contained in the first lawsuit. *Id.*

In *Williams v. National Mortgage Co.,* 903 S.W.2d 398 (Tex.App.-Dallas 1995, writ denied), the borrowers filed a lawsuit against their lender for wrongful foreclosure and the lender counterclaimed. *Id.* at 400–401. The lender later filed a notice of nonsuit, but the trial court mistakenly dismissed the borrowers' claims instead of the lender's counterclaims. *Id.* at 401. The lender then filed a second counterclaim in the first lawsuit and was granted summary judgment. *Id.* The borrowers then filed a second lawsuit against the lender, asserting claims of wrongful foreclosure, trespass to try title, violations of the DTPA, and breach of the implied duty of good faith and fair dealing. *Id.* In response, the lender contended the borrower's claims in the second suit arose out of the same transaction at issue in the first suit and were compulsory counterclaims barred by res judicata. *Id.* After determining that the trial court had subject matter jurisdiction to render judgment in the first lawsuit, the court of appeals held that the borrowers' claims in the second suit were compulsory counterclaims they were required to refile in the first lawsuit, either after their claims were dismissed or in response to the lender's second counterclaims. *Id.* at 403–04. Accordingly, the borrowers were precluded from asserting

their compulsory counterclaims in the second lawsuit. *Id.* at 404.

■ Therefore, we conclude that the trial court's grant of summary judgment on Dr. Zurita's business tort claims may be affirmed based on res judicata.

■ Next, the Zuritas contend that their claims in this lawsuit were immature claims that only accrued post-judgment. But the Zuritas did not raise this argument in response to the appellees' summary-judgment briefing below.[6] Any issue which the non-movant claims would justify denying summary judgment must be included in the response. *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex.1993). An appellate court cannot reverse a summary judgment based on an issue not presented to the trial court. *State Bd. of Ins. v. Westland Film Indus.*, 705 S.W.2d 695, 696 (Tex.1986). Moreover, this argument ignores the fact that the letter forming the basis of the claims in this lawsuit is the same September 25, 1999 letter Dr. Zurita alleged was the basis of his nearly identical claims in the original lawsuit. Thus, even if the issue had been raised below, we would disagree that the claims were not mature during the pendency of the original case. *See Weiman*, 846 S.W.2d at 420 (rejecting appellant's contention that claims in second suit were not mature at time of first suit when claims were almost identical to those raised and non-suited in first suit); *see also A & P Transp. Co., Inc.*, No. 14–09–00729–CV, 2009 WL 3365841, at *2 (Tex.App.-Houston [14th Dist.] Sept. 10, 2009, no pet.) (mem. op.) ("The only deadline imposed by Rule 97(a) for filing a compulsory counterclaim is prior to final judgment in the initial action between the parties involving the same transaction or occurrence.").

■ In their reply brief, the Zuritas further argue that their counterclaims in the original lawsuit were not, in fact, compulsory counterclaims.[7] The Zuritas have waived this issue by failing to raise it in their original appellate brief. *See Zamarron v. Shinko Wire Co., Ltd.*, 125 S.W.3d 132, 139 (Tex.App.-Houston [14th Dist.] 2003 pet. denied) (stating that issues not raised until a reply brief are waived). Therefore, we do not consider the argument that the claims were not compulsory and thus not required to be asserted in the original lawsuit.

We therefore overrule the Zuritas' third issue.

## IV

In their fourth and seventh issues, the Zuritas contend the evidence is legally and factually insufficient to support the jury's failure to find malicious civil prosecution, and the trial court erred in excluding as irrelevant evidence of the manner in which the underlying lease dispute was prosecuted. Because the Zuritas address the exclusion of evidence within their sufficiency

6. In their reply brief, the Zuritas contend they argued below that their counterclaims in the earlier lawsuit were not compulsory counterclaims. But that argument was made in a response to a motion to dismiss which the appellees filed shortly after the Zuritas filed this lawsuit, not in response to the appellees' summary-judgment motions.

7. In relevant part, Rule 97(a) of the Texas Rules of Civil Procedure provides that a compulsory counterclaim is "any claim within the jurisdiction of the court, not the subject of a pending action, which at the time of filing the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." Tex.R. Civ. P. 97(a).

argument, we will also address them together.

To prevail in a suit alleging malicious prosecution of a civil claim, Zurita was required to establish: (1) the institution or continuation of civil proceedings against the plaintiff; (2) by or at the insistence of the defendant; (3) malice in the commencement of the proceeding; (4) lack of probable cause for the proceeding; (5) termination of the proceeding in his favor; and (6) special damages. *Tex. Beef Cattle Co. v. Green*, 921 S.W.2d 203, 207 (Tex. 1996).

When conducting a legal-sufficiency review, we must view the evidence in the light most favorable to the jury's findings, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex.2005). A party attacking the legal sufficiency of an adverse finding on an issue on which he has the burden of proof must demonstrate that the evidence conclusively establishes all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex.2001). In reviewing a factual-sufficiency challenge, we consider and weigh all the evidence in a neutral light and may set aside the finding only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id.* at 242.

We review a trial court's decision to admit or to exclude evidence for an abuse of discretion. *In re J.P.B.*, 180 S.W.3d 570, 575 (Tex.2005). A trial court abuses its discretion in admitting or excluding evidence if it acts without reference to any guiding rules and principles, or if the act complained of is arbitrary and unreasonable. *Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682, 687 (Tex.2002). We must uphold a trial court's evidentiary ruling if there is any legitimate basis in the record to support it. *Owens–Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex.1998). We will not reverse a trial court for an erroneous evidentiary ruling unless the error was reasonably calculated to cause and probably did cause the rendition of an improper judgment. *See* Tex. R.App.P.44.1.

The Zuritas contend the jury's refusal to find Lombana maliciously prosecuted the case is legally and factually insufficient because no reasonable person would believe there could be a recovery given the facts as "honestly and reasonably believed" before Lombana filed suit in 1999. *See Kroger Tex. Ltd., P'ship v. Suberu*, 216 S.W.3d 788, 792–93 (Tex.2006) (stating in context of criminal malicious prosecution that the probable cause element asks whether a reasonable person would believe a crime had been committed given the facts as the complainant honestly and reasonably believed them to be before the criminal proceedings were instituted). Specifically, the Zuritas argue that Lombana knew or reasonably should have known that the lease had terminated, and therefore he lacked probable cause for his suit for breach of contract based on Zurita's refusal to honor the lease's renewal option. The Zuritas maintain that Lombana's lawsuit was instead to retaliate for Zurita's eviction of Lombana. To support their contention that the evidence conclusively demonstrates Lombana had no probable cause to prosecute the underlying lawsuit, the Zuritas rely on *Masterson v. Pig'n Whistle Corp.*, 161 Cal.App.2d 323, 326 P.2d 918 (1958). In that case, the court affirmed a judgment in favor of the plaintiffs in a malicious-prosecution suit, holding as a matter of law there was no probable cause for the underlying breach of contract action when the undisputed evidence showed that the defendants had no

reasonable grounds to support their interpretation of an option contained in the parties' contract. *Id.* at 927. We conclude, however, that *Masterson* does not control the disposition of this issue.

In *Masterson*, Pig'N Whistle sued Masterson and others for breach of contract, arguing that their contract gave Pig'N Whistle an option to renew its sponsorship of a television program indefinitely. *See id.* at 923. The trial court disagreed and found in favor of Masterson. *Id.* Masterson and the others then brought a malicious-prosecution suit against Pig'N Whistle and its officers and directors, and prevailed at trial. *Id.* at 924–26. On appeal, the court determined that there were no disputed issues of fact on the probable-cause element, and held that there was no probable cause as a matter of law, noting "[i]t was an inescapable conclusion from the evidence that the officers of Pig'N Whistle had no reasonable grounds for believing that the corporation had an option to sponsor the program for a third cycle of broadcasts" as the contract "expressly provide[d] for but a single option." *Id.* at 927.

 The present case is distinguishable from *Masterson* because there was considerable dispute about the facts and circumstances surrounding the parties' interpretation of the lease, and Lombana initially prevailed and obtained a judgment in his favor after the trial court rejected the Zuritas' interpretation of the contract. When determining whether probable cause exists, "the question is not what the facts actually were, but rather what the defen-

dant honestly and reasonably believed the facts to be." *Metzger v. Sebek*, 892 S.W.2d 20, 42 (Tex.App.-Houston [1st Dist.] 1994, pet. denied). Therefore, we cannot say as a matter of law Lombana could not have reasonably believed he could recover, as he did recover, at least at the trial level.[8]

Conversely, Lombana contends the judgment in his favor below demonstrates probable cause as a matter of law, even though the judgment was reversed on appeal. *See Lancaster & Love, Inc. v. Mueller Co.*, 310 S.W.2d 659, 663 (Tex.Civ.App.-Dallas 1958, writ ref'd) (stating that "[e]ven though the judgment is subsequently set aside, and the final trial results in favor of the party now plaintiff, the recovery in the first instance has been held conclusive on the question of the presence of probable cause."); *see also Metzger*, 892 S.W.2d at 43 (holding that appellees were entitled to directed verdict on appellant's claim for malicious prosecution when probable cause was shown even though criminal charges were dismissed); *Adcox v. Safeway Stores, Inc.*, 512 F.Supp. 452, 453–54 (N.D.Tex.1980) (holding conviction in underlying criminal action conclusively demonstrated probable cause even though it was dismissed on appeal).

But the Zuritas also contend that they alleged that Lombana engaged in improper and fraudulent acts in prosecuting the underlying lease dispute which prejudiced the Zuritas. *See Lancaster & Love, Inc.*, 310 S.W.2d at 663 (noting that some cases have held that the underlying favorable judgment may be "impeached by proof

8. We also note that in *Zurita v. Lombana*, the First Court of Appeals explained it did not consider Lombana's argument that Zurita was aware of and ratified the sublease, because Lombana did not plead or urge ratification as a ground for summary judgment. 2003 WL 21027140, at *3 n. 5. Instead, the court decided only whether, based on the express terms of the lease, Lombana had a right to extend the lease. *Id.* In the present action, the parties presented conflicting evidence to the jury on the issue of whether Zurita was aware of the sublease. The jury was entitled to consider this in concluding Lombana did not maliciously prosecute the underlying lease dispute.

that it was obtained by fraud or perjury"). Consequently, they urge, their "manner of prosecution" evidence was relevant to rebut the presumption of probable cause.

In addition to the lease itself, the Zuritas point to (1) testimony by one of Lombana's lawyers in the underlying lease dispute that Lombana did not disclose the existence of a pharmacy sublease and that the lawyer's opinion concerning the exercise of the option would have changed if he knew about the sublease as he would have questioned whether the sublease caused the option to terminate, and (2) testimony by Lombana that he told the lawyer he had not sublet any portion of the premises without permission and could not recall if he gave the lawyer a copy of the sublease. They also point to a defense exhibit consisting of Lombana's response to Zurita's motion for summary judgment in the underlying case and Lombana's attached affidavit in which he states that he "never received any notice of an alleged subleasing default" from Zurita. The Zuritas claim this exhibit demonstrates that Zurita "may not have known of sublease and would have to have given notice of default, in effect admitting sublet without consent."

Although such evidence may raise a fact issue to rebut the presumption of probable cause in other circumstances, on the facts of this case it is no evidence that the judgment was procured by fraud, perjury, or other improper practices. In the underlying lease dispute, the trial court determined Zurita's liability on competing motions for summary judgment on breach of contract, leaving for the jury only the issue of damages. *See Zurita v. Lombana,* 2003 WL 21027140, at *2. Lombana argued that he had validly exercised the lease option and Zurita argued that Lombana had no right to extend the term of the lease because his rights to exercise the extension option had terminated when he subleased a portion of the premises to a pharmacist. *Id.* Thus, issue of the existence of the sublease was before the trial court as well as the argument that there was no written consent for the sublease. The trial court considered the parties' differing interpretations of the lease and determined the issue adversely to Zurita. *Id.* The evidence the Zuritas point to would not have altered this outcome in any way. Indeed, their supporting evidence includes a summary-judgment response from that case, which the trial court presumably would have considered. Therefore, Lombana has established the existence of probable cause as a matter of law based on the favorable judgment in the underlying lease dispute, even though it was reversed on appeal. *See Lancaster & Love,* 310 S.W.2d at 663; *Metzger,* 892 S.W.2d at 43; *Adcox v. Safeway Stores, Inc.,* 512 F.Supp. at 453–54.

■■■ The Zuritas also contend that additional "manner of prosecution" evidence was relevant to rebut the presumption that a favorable judgment below conclusively establishes the existence of probable cause, but the trial court erroneously excluded it. Specifically, they point to portions of the record in which their counsel attempted to elicit testimony concerning whether Lombana's damages expert—an accountant who had worked for both Lombana and Zurita—was told by one of Lombana's attorneys that Zurita had waived any conflict of interest when he had not.[9]

---

9. The Zuritas also appear to contend that the trial court erred in excluding some deposition testimony from one of Lombana's original lawyers that Lombana had said his practice had been unprofitable. Similar evidence was elicited from Inez Romero, who had worked for Lombana as a nurse's assistant for eleven years. Romero testified that Lombana would say that the clinic was "dead" and he was not interested in maintaining it. She also testi-

Presumably, the accountant would not have testified in the underlying lease dispute concerning Lombana's damages without a waiver from Zurita. The trial court repeatedly sustained Lombana's counsel's objections that the testimony sought was irrelevant. The Zuritas contend this evidence was not cumulative and its admission probably would have resulted in a different verdict.

■ Here, however, we cannot say that the trial court abused its discretion in excluding testimony concerning whether Lombana's lawyers mislead his damages expert to obtain his testimony in the underlying case. This evidence, like much of the other "manner of prosecution" evidence the Zuritas complain about, is directed to sharp practices Lombana's attorneys allegedly used in the underlying lawsuit. Such evidence, if true, may support an action for sanctions in the underlying case, but it is generally not evidence supporting a malicious prosecution suit. Other than their cursory statements, the Zuritas make no argument and cite no authorities to support their contention that this kind of evidence is relevant in a malicious prosecution case. Even if we were to conclude that the evidence was relevant and the trial court erred in excluding it, the Zuritas have not shown that the error was harmful. *See Tex. Dept. of Transp. v. Able*, 35 S.W.3d 608, 617 (Tex.2000).

We therefore overrule the Zuritas' fourth and seventh issues.[10]

## V

In their fifth issue, the Zuritas contend the trial court erred in directing a verdict on conspiracy. They cite *Likover v. Sunflower Terrace, II, Ltd.*, 696 S.W.2d 468 (Tex.App.-Houston [1st Dist.] 1985, no writ), for the proposition that an attorney can be liable if he knowingly participates in a conspiracy and contend that Dr. Lombana's continuation of the underlying lease dispute after Dr. Zurita filed "dispositive motions" asserting that the sublease terminated the option constitutes more than a scintilla of evidence to preclude a directed verdict.

■ A trial court may instruct a verdict in favor of a defendant if no evidence of probative force raises a fact issue on the material questions in the suit. *See Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex.2000). A directed verdict in favor of a defendant may be proper when (1) a plaintiff fails to present evidence raising a fact issue essential to the plaintiff's right of recovery or (2) the plaintiff admits or the evidence conclusively establishes a defense to the plaintiff's cause of action. *See id.* We review the trial court's granting of a directed verdict by following the same standard for assessing legal sufficiency of the evidence. *Mathis v. Restoration Builders, Inc.*, 231 S.W.3d 47, 50 (Tex.App.-Houston [14th Dist.] 2007, no pet.). We review the entire record in the light most favorable to the nonmovant, indulging every reasonable

fied that Lombana did not have a reasonable number of patients, and he almost "never showed up" at the clinic. She also stated that Lombana "wanted to sue Dr. Zurita because the clinic where he was at there were no patients." The Zuritas contend Lombana's lawyer's "confirming" testimony "with regard to unprofitable practice" was relevant to both probable cause and malice. Even if we assume the trial court erred, however, we will not reverse a judgment for an erroneous ruling if the evidence in question is cumulative. *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex.2001).

10. Because of our disposition of these issues, we do not reach the Zuritas' sixth issue concerning the trial court's refusal to submit requested jury instructions for the malicious-prosecution charge.

**482**

inference and resolving any doubts against the motion. *City of Keller v. Wilson,* 168 S.W.3d at 824.

 To establish civil conspiracy, the Zuritas were required to establish the following elements: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as a proximate result. *See Tri v. J.T.T.,* 162 S.W.3d 552, 556 (Tex.2005). Because conspiracy is a derivative tort, the Zuritas must show that Dr. Lombana was also liable for some underlying tort to prevail. *See Rodarte v. Investeco Group, L.L.C.,* 299 S.W.3d 400, 413 (Tex.App.-Houston [14th Dist.] 2009, no pet.); *Baty v. ProTech Ins. Agency,* 63 S.W.3d 841, 864 (Tex.App.-Houston [14th Dist.] 2001, pet. denied).

 The evidence the Zuritas point to consists of Dr. Lombana's testimony concerning his instructions to and reliance on his lawyers in the underlying lease dispute. The Zuritas do not explain how this testimony raises a fact issue on any of the required elements of conspiracy, much less all of them. Further, the Zuritas argued below that the underlying tort supporting the conspiracy claim was malicious prosecution. We have already held that the Zuritas cannot prevail on their malicious-prosecution claim as a matter of law.

We therefore overrule the Zuritas' fifth issue.

### VI

In their eighth issue, the Zuritas contend the judgment should be reversed and remanded based on incurable jury argument. Specifically, they complain that during closing argument, Dr. Lombana's attorney repeatedly called Dr. Zurita a liar. The offending argument includes references to an originally privileged letter Dr. Zurita wrote to the medical board that appears to contradict his position in the underlying lease dispute and the Zuritas' wealth.[11]

 Incurable jury argument is rare. *Living Ctrs. of Tex., Inc. v. Penalver,* 256 S.W.3d 678, 681 (Tex.2008). For an argument to be considered incurable, the complaining party must not have invited or provoked the improper argument. *Id.* at 680. Incurable jury argument exists when the argument is so prejudicial or inflammatory that an instruction to the jury to disregard cannot eliminate the harm. *Clark v. Bres,* 217 S.W.3d 501, 509 (Tex.App.-Houston [14th Dist.] 2006, pet. denied). The party claiming incurable harm must persuade the court that, based on the record as a whole, the offensive argument was so extreme that a "juror of ordinary intelligence could have been persuaded by that argument to agree to a verdict contrary to that to which he would have agreed but for such argument." *Phillips v. Bramlett,* 288 S.W.3d 876, 883 (Tex.2009).

 Instances of incurable jury argument include appeals to racial prejudice; the use of inflammatory epithets such as "liar," "fraud," "faker" "cheat," and "imposter"; and unsupported charges of perjury. *See Standard Fire Ins. Co. v. Reese,* 584 S.W.2d 835, 840 (Tex.1979). But a litigant is entitled to have his counsel argue the facts of the case to the jury. *Clark,* 217 S.W.3d at 510. Trial counsel may properly discuss the reasonableness of the evidence as well as the probative effect or lack thereof, of the evidence. *Id.*

11. Dr. Zurita waived the attorney-client privilege to enable his former lawyer to testify concerning the contents of his file.

Trial counsel should be allowed wide latitude in arguing the evidence and the reasonable inferences from the evidence to the jury. *Id.*

 Here, Lombana's attorney argued that Zurita lied when discussing the evidence before the jury. Arguing based on evidence in the record is proper and is the purpose of closing argument. *Id.* (citing *Tex. Sand Co. v. Shield,* 381 S.W.2d 48, 58 (Tex.1964)). As noted above, much of the argument was directed to a letter, which Lombana's attorney deemed "the smoking gun," that was admitted into evidence as a prior inconsistent statement. This letter arguably reflected that Zurita knew of and approved Lombana's sublease to the pharmacist, Mobli, contrary to the position Zurita took in the underlying lease dispute and in the present case. Although the Zuritas complain that Lombana's counsel mischaracterized the letter and used it to confuse the jury, the jury was entitled to consider both parties' positions concerning the meaning and import of the letter's contents, and Lombana's attorney was likewise entitled to discuss this and other matters in evidence. *See id.*

 The Zuritas also complain that Lombana's attorney improperly injected wealth into his argument, citing *Reliance Steel & Aluminum Co. v. Sevcik,* 267 S.W.3d 867 (Tex.2008). In *Reliance Steel,* the supreme court held that it was improper for the plaintiffs in a negligence case to tender evidence of the defendant's wealth when punitive damages were not at issue. *Id.* at 869–70. *Reliance Steel* is distinguishable because the present case does not involve the improper admission of a defendant's relative wealth; instead, Lombana's attorney discussed evidence of the Zuritas' wealth in the context of their voluntary bankruptcy, which was directly relevant to their claims and damages. The argument was not improper because it was based matters in evidence. *See Clark,* 217 S.W.3d at 510.

Thus, based on the record as a whole, the argument by Lombana's attorney was not so extreme that a juror might have been persuaded to agree with a verdict contrary to that which the juror would have adopted but for the argument. *See Bramlett,* 288 S.W.3d at 883. Nor did these comments strike at the very core of the judicial process. *See id.* Therefore, we hold that the argument was not incurable.

We overrule the Zuritas' eighth issue.

\* \* \*

We overrule the Zuritas' issues and affirm the trial court's judgment.