The GENECOV GROUP,
INC., Appellants,

v.

ROOSTH PRODUCTION COMPANY,
Sam Roosth and Plains Marketing,
L.P., Appellees.

No. 12–02–00106–CV.

Court of Appeals of Texas,
Tyler.

May 21, 2003.

Rehearing Overruled April 9, 2004.

Martin R. Bennett, Kugle, Skelton & Bennett, P.C., Athens, Mike Hatchell, Sam B. Cobb Jr., Tyler, for appellants.

Otis Carroll, Deborah J. Race, Ireland Carroll & Kelley, P.C., Tyler, for appellees.

Panel consisted of WORTHEN, C.J., and GRIFFITH, J.

## OPINION

JAMES T. WORTHEN, Chief Justice.

The Genecov Group, Inc., Michael D. Lewis, Charles A. Hawn, Lester Kinabrew, Jr., Virginia Browning and Reba Hatton ("Genecov"), appeal the trial court's grant of summary judgment in favor of Roosth Production Company, Sam Roosth Individually, and Plains Marketing, L.P. ("Roosth"). In four issues, Genecov contends that the trial court erred in rendering summary judgment against it based on res judicata. We affirm in part and reverse and remand for further proceedings in part.

### BACKGROUND

In 1998, Genecov filed suit against Roosth ("Genecov I"), seeking a declaratory judgment on two major issues. First, Genecov sought a declaration that various oil and gas leases, obtained in 1983 and a part of the Turlington Gas Unit No. 2 in Henderson County, remained valid and that it was the lawful operator of the unit as opposed to Roosth, listed as the operator of record with the Texas Railroad Commission. Eventually, the parties agreed to submit the lease validity issue to arbitration. This issue was submitted to three arbitrators and the arbitrators were to decide three specific questions:

1) Are the Unit Leases, insofar as they cover the area of the Turlington Gas Unit No. 2, valid and in force or have they expired, thereby causing the new leases to be valid?

2) If the new leases are valid, are they subject to the Operating Agreement?

3) If the Unit Leases expired, was the expiration the result of gross negligence or willful misconduct by the operator of the Turlington Gas Unit No. 2?

The issue of who would be the lawful operator of the Turlington Gas Unit No. 2 was not submitted to the arbitrators.

On June 20, 2000, the arbitrators rendered their decision and found that the unit leases, insofar as they covered the area of the Turlington Gas Unit No. 2, were valid, in force, and had not expired. This order answered the three questions submitted to the arbitrators. On July 10, 2000, the arbitrators also submitted a supplemental arbitration order in which they awarded attorney's fees and other costs related to the "arbitrated issues" to Genecov. When the supplemental arbitration order was issued, arbitrator Melvin Cockrell prepared a prescient special concurrence stating that he had "broader concerns":

> Parties to a long, expensive and continuing controversy, of which this arbitration is only a part, have put before this panel three highly circumscribed questions.... Speaking only for myself, I wonder why the parties selected these questions as dispositive and not others. Consider the historical setting. Two close family groups split, and with the split agreed to separate their properties and operations thereof. Tensions continued.... The parties for good and sufficient reasons selected the three circumscribed questions noted above as dispositive. The test we were left to use in our deliberations was developed for mineral owner-lessee disputes. It really does not accommodate disputes between co-owners. The panel has given its considered answer. But something seems wrong with this picture. What has been accomplished? After much aggravation and expenditure of valuable time and resources that could have gone to beneficial business purposes, it would appear

from my vantage point, admittedly through a glass darkly, that the parties are pretty much where they started: With the Roosth operators. Did we help?, I hope so, but I doubt it. Ultimately I suspect this is really not an oil and gas case.

Genecov immediately filed a "Motion for Judgment on Arbitration Award" in the 392nd Judicial District Court of Henderson County. A judgment on the arbitration award was also submitted, ordering Roosth to pay the attorney's fees and costs assessed by the arbitrators. However, rather than confirming the old leases, the proposed judgment went directly to the issue of who the operator of the Turlington Gas Unit No. 2 would be and stated "the Genecov Group is declared to be the lawful operator of the leases."

On August 17, the trial court held a hearing on Genecov's motion. The next day, it entered the following findings of fact and conclusions of law:

1. Plaintiffs [Genecov], with the agreement of the Defendant [Roosth], framed the issues and relief sought in the Agreement to Arbitrate Issues in Dispute (the "Agreement").

2. The Agreement states that it is an agreement to arbitrate "the ultimate issues existing in the above action, brought by plaintiffs."

3. The Arbitration Order (the "Award") states that as to the issues it was "charged" to decide, it only ordered that the "old" unit leases were in effect, not the "new" leases.

4. Plaintiffs now want the Court to confirm the Award. With no case law on point (presented by either side), Plaintiffs argued that the Award was tantamount to a jury finding and that the Court should

then take that finding (that the "old" leases were in effect) and apply ("confirm") it to the previous "evidence" (Summary Judgment evidence?) and fashion a judgment that grants the relief of determining The Genecov Group as the lawful operator, inter alia.

5. The Defendant argued that the applicable statutes requiring this Court to "confirm" an award do not mean treating the arbitration as fact finding but as a final judgment.

6. According to *Porter & Clements L.L.P. v. Stone*, 935 S.W.2d 217, 221, an arbitrator's award has the same effect as a judgment, and the trial court cannot substitute its judgment for the arbitrator's.

7. Plaintiffs filed no pleadings to vacate, correct, or modify the Award.

8. Plaintiffs did not seek to re-open arbitration.

9. The Court finds that the framing of the arbitration issues should be construed, if in dispute, against the Plaintiffs, who drew the issues, and who were the only parties seeking affirmative relief.

10. The Court finds that the Plaintiffs in so framing the issues, acted not unlike a plaintiff in trial court, submitting issues to the jury more limited in scope than could support all of its pleadings or relief sought. In other words, it appears to the Court that the Plaintiffs waived their relief of determination of the operator by the scope of the arbitrated issues and relief sought and by the Award itself (with arbitration not re-opened to clarify, etc.).

11. The Court does not find that the statute or common law requires it to do other than confirm the Award

itself, if on its face, it will support a judgment.

12. The Court finds that the Award can support a judgment that the "old" leases (and not the "new" leases) are the leases under which the minerals are to be produced. The Court makes no order on removal of the operator or other relief sought, except as to costs. . . .

On August 29, 2000, the court entered a final judgment, confirming that "the Unit leases insofar as they cover the area of the Turlington Gas Unit No. 2, are valid, in force and have not expired." It also awarded Genecov its attorney's fees and costs. No mention was made in this final judgment about who was the lawful operator of the unit.

On December 14, 2000, Genecov filed a second suit against Roosth ("Genecov II"). In this new suit, Genecov sought a declaratory judgment, asking the trial court to find that it was the lawful operator of the Turlington Gas Unit No. 2. It further sought relief against Roosth for the conversion of production proceeds from the Turlington No. 1 and No. 2 wells, which occurred both before and after August 29, 2000, the date the final judgment was entered in Genecov I. Further, Genecov sought damages from Roosth as well as Plains Marketing, L.P. (who was not a party in Genecov I) for conversion of production proceeds after August 29, 2000. Genecov also claimed that Plains Marketing, L.P. had retained part of Genecov's proceeds from other wells unrelated to the leases that were the subject of the final judgment in Genecov I. As a result, Genecov alleged that Plains Marketing, L.P. had been unjustly enriched at Genecov's expense. Finally, Genecov contended that there was a new dispute between the parties regarding the payment of the litigation expenses ordered in the Genecov I final judgment. Roosth filed a motion for summary judgment, contending that all of Genecov's claims in Genecov II were barred by the final judgment entered in Genecov I. Following a hearing, the trial court entered a final summary judgment for Roosth on February 27, 2002. Genecov timely filed this appeal after the trial court denied its motion for new trial.

In four issues, Genecov contends that res judicata does not apply to the well operator issue raised in Genecov II and that all other issues raised in Genecov II were either not raised in Genecov I or were based on facts which had occurred after Genecov I.

## STANDARD OF REVIEW

Summary judgment is appropriate if the motion and accompanying evidence establish that the moving party is entitled to judgment as a matter of law on the issues set forth in the motion. TEX.R. CIV. P. 166a(c). A defendant moving for summary judgment must either disprove at least one element of the plaintiff's theory of recovery or plead and prove all essential elements of an affirmative defense. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex.1979). When reviewing a summary judgment, we take as true all evidence favorable to the non-movant and indulge every reasonable inference in the non-movant's favor. *Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex.1997). On appeal, the movant still bears the burden of showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex.1999). Therefore, we review the trial court's summary judgment de novo. *See Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex.1994).

### RES JUDICATA—UNIT OPERATOR

■ In its first issue, Genecov alleges that res judicata does not apply to Genecov II because in Genecov I, the trial court only had authority to enter a judgment on the validity of the leases. In its second issue, Genecov contends that in Genecov II, it was entitled to seek a determination of the legal consequences of the arbitrator's award in Genecov I that declared the 1983 leases were valid. In its third issue, Genecov argues that the supplemental relief provisions of section 37.011 of the Texas Civil Practices and Remedies Code permit it to bring a new action to determine the rightful unit operator issue after Genecov I determined that its leases were valid. Because these three issues are so intertwined, we will consider them together.

■ Res judicata, also known as claim preclusion, prevents the re-litigation of a finally adjudicated claim and related matters that should have been litigated in a prior suit. *State and County Mut. Fire Ins. Co. v. Miller,* 52 S.W.3d 693, 696 (Tex.2001). Res judicata requires proof of the following elements: 1) a prior final judgment on the merits by a court of competent jurisdiction, 2) identity of parties or those in privity with them, and 3) a second action based on the same claims as were raised or could have been raised in the first action. *Amstadt v. U.S. Brass Corp.,* 919 S.W.2d 644, 652 (Tex.1996). A determination of what constitutes the subject matter of a suit requires an analysis of the factual matters that make up the gist of the complaint. *Barr v. Resolution Trust Corp.,* 837 S.W.2d 627, 630 (Tex. 1992). Any cause of action which arises out of the same facts should, if practicable, be litigated in the same lawsuit. *Id.*

■ In support of its contention that the principles of res judicata do not apply to Genecov II, Genecov relies on *Valley Oil Co. v. City of Garland,* 499 S.W.2d 333, 336 (Tex.Civ.App.-Dallas 1973, no writ). In *Valley Oil,* the City of Garland ("Garland") sought an injunction against a gasoline station that was operating in an area prohibited by a zoning ordinance. *Id.* at 335. However, Valley Oil Company defeated Garland's request for an injunction. On appeal, the Dallas Court of Appeals reversed and rendered judgment for Garland, stating that Valley Oil Company was violating the zoning ordinance. In its request for relief in the court of appeals, Garland did not seek to have the court issue an injunction against Valley Oil Company. After the court of appeals' mandate was issued, Garland filed a "Petition for Injunction to Enforce the Judgment" in the trial court. Valley Oil Company answered with a plea of res judicata. The Dallas Court of Appeals determined that the injunction, granted by the trial court after its mandate had been issued, was not barred but was rather a proper means of giving the judgment full effect. The court of appeals determined that the police power to regulate the use of property was appropriate in this case although it went against the usual rule of res judicata. *Id.* at 336. The court's rationale was that the losing party would normally be expected to recognize the police power of a political subdivision of the sovereign (the City of Garland) but that if it failed to do so, the sovereign should be able to enforce its judgment by subsequent coercive orders. *Id.*

Roosth contends that the principle enumerated in *Valley Oil* does not apply to the instant case because in *Valley Oil,* the issue involved the coercive use of police power by a political subdivision, whereas this case does not. We agree. Genecov and Roosth are two private parties. Neither party is a political subdivision with the use of coercive police powers; accord-

ingly, *Valley Oil* is not applicable to the case before us.

Genecov further contends that Genecov II is outside the ambit of res judicata because it is a legitimate attempt to enforce the arbitration order and the legal implications of the trial court's final judgment confirming that order. In support of this argument, Genecov cites *Fluor Daniel, Inc. v. H.B. Zachry Co., Inc.*, 1 S.W.3d 166, 170 (Tex.App.Corpus Christi 1999, pet. denied). In *Fluor Daniel*, Fluor and Zachry entered into a settlement agreement with the plaintiff where Fluor contributed $800,000.00 and Zachry contributed $50,000.00 into a settlement fund. *Id.* at 167. Under the agreement, Fluor and Zachry agreed to remain parties to the proceeding and to arbitrate the comparative responsibility between the two of them. The arbitration panel decided that Fluor and Zachry were each ten percent liable and that the plaintiff's employer (who had not even been a party to the arbitration or even the original lawsuit) was liable for eighty percent. The district court later confirmed the arbitration panel's decision in its final judgment. Subsequent to the trial court's entry of judgment, Zachry contended that it was liable for only ten percent of the plaintiff's injuries, or a total of $85,000.00 of the agreed settlement amount. Fluor disagreed and sued Zachry for an initial $375,000.00, contending that Zachry was liable for one-half of the plaintiff's injuries, or a total of $425,000.00 ($50,000.00 initially tendered plus an additional $375,000.00). *Id.* at 168. Zachry alleged that it was entitled to a summary judgment against Fluor based upon the principles of res judicata and collateral estoppel. The court of appeals determined that the suit was not res judicata because the trial court was only being asked to give effect to the prior judgment and not to reapportion liability. *Id.* at 170.

Roosth argues that *Fluor Daniel* is not applicable to the instant case. We agree. In *Fluor Daniel*, there was no request that a new finding be made regarding fault or liability. Zachry was only interested in determining how the apportionment should be applied to the settlement fund; i.e., was it liable for $425,000.00 or $85,000.00? In the first suit between Fluor and Zachry, the trial court had only determined the percentage of liability, not how a settlement fund would be apportioned based upon that liability. The parties assumed that the first court would apportion their liability in a way that it would equal one hundred percent. However, when a nonparty was determined by the arbitrators to be eighty percent liable, the parties were left without guidance as to how the $850,000.00 should be apportioned between them. It was necessary for the court in a subsequent suit to specifically apportion the fund based on the liability that had already been determined. In Genecov I, the fact of who should be the operator was not determined. Instead of asking for additional relief on the operator issue in Genecov II, Genecov is seeking the same relief it sought in Genecov I. Therefore, Genecov's claims related to the operator issue fit squarely within the ambit of res judicata.

 When there is a legal relationship, such as under a lease, a contract, or a marriage, all claims arising from that relationship will arise from the same subject matter and be subject to res judicata. *Pinebrook Properties, Ltd. v. Brookhaven Lake Property Owners Ass'n*, 77 S.W.3d 487, 497 (Tex.App.-Texarkana 2002, pet. denied). Claims in a business relationship should be combined when they involve common core facts. *Id.* When the same facts are involved, two trials should be avoided by combining all of the matter existing between the parties in one suit.

See *Twyman v. Twyman*, 855 S.W.2d 619, 625 (Tex.1993). Here, the same facts which led Genecov to seek a determination of who the unit operator was in Genecov I existed in Genecov II. Nothing in the record indicates that any new facts had emerged regarding the proper unit operator. Genecov contends that because the arbitrators did not consider the unit operator issue in Genecov I, it should be able to have that issue determined in Genecov II. It further contends that the determination of the unit operator issue was contingent upon the court's determination of the validity of the 1983 leases. This argument fails because the contingent nature of a claim does not preclude the operation of res judicata. *Pinebrook Properties, Ltd.*, 77 S.W.3d at 498.

■ A final judgment is conclusive of all issues that are raised in the pleadings. See *Samedan Oil Corp. v. Louis Dreyfus Natural Gas Corp.*, 52 S.W.3d 788, 794 (Tex.App.-Eastland 2001, pet. denied). Here, Genecov I put the unit operator issue before the court. As the trial court in Genecov I pointed out in its findings of fact and conclusions of law, Genecov had the burden of bringing this issue forward. This burden on Genecov continued even when it agreed to arbitrate Genecov I. Accordingly, we hold that the unit operator issue in Genecov II was the same claim that had been raised in Genecov I; therefore, this claim is barred by res judicata in Genecov II.

■ Finally, Genecov contends that in asking the trial court in Genecov II to determine the operator issue, it is seeking supplemental relief as contemplated by Section 37.011 of the Declaratory Judgment Act. Tex. Civ. Prac. & Rem.Code Ann. § 37.011 (Vernon 1997 & Supp.2003). However, this statute specifically contemplates "further relief based on the declaratory judgment." *Id.* We believe the *Fluor Daniel* case illustrates the type of relief that is contemplated by the statute. In *Fluor Daniel*, the second litigation arose out of a new issue between the parties that had been created by the apportionment of only ten percent liability to each of them. *Fluor Daniel*, 1 S.W.3d at 169. "Further" is defined as "in addition." The American Heritage College Dictionary 553 (3d ed.1997). In Genecov II, Genecov was not seeking additional relief regarding the designation of the unit operator; rather, it was seeking to have the same issue determined based on the same facts it had pleaded in Genecov I. Accordingly, Genecov's issues one, two and three are overruled.

### Res Judicata—New Issues

■ In its fourth issue, Genecov contends that the monetary and other disputes which arose between the parties after the final judgment in Genecov I are not precluded from being litigated in Genecov II by res judicata. Roosth contends that these issues are tied to Roosth's position as unit operator and they are therefore barred by res judicata from being litigated in Genecov II.

■ A judgment in one suit will not operate as res judicata to a subsequent suit on the same question between the same parties where, in the interval, facts have changed or new facts have occurred which may alter the legal rights or relations of the parties. *Hernandez v. Del Ray Chemical Int'l, Inc.*, 56 S.W.3d 112, 116 (Tex.App.-Houston [14th Dist] 2001, no writ). In a supplemental response to Roosth's motion for summary judgment in Genecov II, Genecov presented the affidavit of John Procter, its oil and gas vice president. Procter's affidavit stated that the dispute in Genecov II regarded monies involving the Turlington No. 1 well and improper use and payment of funds by

Roosth as the operator of the Turlington No. 2 well. Causes of action which could not have accrued at the time of a previous suit are not barred by the principle of res judicata. *See Compania Financiara Libano, S.A. v. Simmons,* 53 S.W.3d 365, 367. Further, we must indulge every reasonable inference and resolve any reasonable doubts in the non-movant's favor. *Rhone–Poulenc, Inc.,* 997 S.W.2d at 223. Therefore, we hold that none of the issues raised by Genecov, other than the issue of who is the lawful unit operator, is barred by res judicata because they are new or different issues from those raised in Genecov I. Genecov's issue number four is sustained.

### CONCLUSION

The trial court's summary judgment is affirmed in part and reversed and remanded in part. The trial court's summary judgment is affirmed as it applies res judicata to the issue of declaring who is the lawful operator of Turlington Gas Unit No. 2. The summary judgment of the trial court is reversed and remanded for further proceedings on all other causes of action alleged by Genecov in Genecov II.