2026 Tex. Bus. 28



THE BUSINESS COURT OF TEXAS
EIGHTH DIVISION

| | | |
|---|---|---|
| CAMINO REAL DEVELOPERS, LLC, | § § § | |
| *Plaintiff,* | § § § | |
| v. | § § | Cause No. 25-BC08B-0015 |
| RIVENROCK, LLC, | § § § | |
| *Defendant.* | § | |

---

## MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S TRADITIONAL MOTION FOR SUMMARY JUDGMENT

---

¶ 1.     Before the Court is Plaintiff Camino Real Developers, LLC's ("Camino Real" or the "Company") Traditional Motion for Summary Judgment, filed March 16, 2026. Defendant RivenRock, LLC ("RivenRock") filed its Response on April 17, 2026, and Camino Real filed its Reply on April 21, 2026. The Court heard the motion on April 28, 2026.

¶ 2.    After reviewing the parties' briefing, the evidence, the parties' May 1, 2026 Joint Advisory and May 4, 2026 Rule 11 stipulations, the arguments of counsel, and applicable law, the Court concludes the motion should be **GRANTED**.

**INTRODUCTION**

¶ 3.    This is a dispute over what it means to acquire a membership interest in a limited liability company. The Court must decide whether a purchaser may acquire such an interest while simultaneously discarding the contractual obligations that bound its predecessor.

¶ 4.    RivenRock purchased a 50% interest in Camino Real from a prior owner. While RivenRock acknowledges its ownership, it claims that Camino Real's Company Agreement (the "Company Agreement" or "Agreement") does not apply to it. Specifically, RivenRock contends it is not subject to the Agreement's dilution provisions—the mechanism that reduces an owner's percentage interest if they fail to meet capital calls. In short, RivenRock contends the ownership interest transferred to it without the accompanying obligations imposed by the Company Agreement.

¶ 5.    This position rests on a fundamental misunderstanding of the LLC structure. A membership interest is not a free-standing asset, untethered from the framework that created it. It is a creature of contract: a bundle of rights, obligations, and conditions that exists only through the Company Agreement. The Agreement

identifies the members, dictates ownership percentages, and allocates the rights and obligations associated with each interest. Without it, RivenRock has no claim to 50% of anything. The interest and the Agreement are legally inseparable.

¶ 6.    The dispositive question, then, is whether the interest that RivenRock acquired can be divorced from the document that gives life to it. Because a membership interest cannot exist in a vacuum, the answer is no.

## BACKGROUND

### A.    Formation of Camino Real

¶ 7.    In 2017, Dan Addante and Jack Dyer formed Camino Real to develop a luxury RV park in Caldwell County, Texas.[1] The Company's governing document—the Company Agreement effective December 7, 2017—established three initial members: JLR Mansions, LLC ("JLR Mansions"), holding a 50% interest, and Addante and Dyer, each holding 25%.[2]

¶ 8.    The Company Agreement assigned JLR Mansions a specific, critical role: it was the Company's sole capital provider. Under Section 4.2(a), JLR Mansions alone was "responsible for any additional Capital Contributions" and was tasked with funding "any and all debt service on any loans."[3] Section 4.2(b) paired that obligation with a specific remedy for nonperformance. If JLR Mansions failed

---

[1] Pl.'s Ex. 1 (Unsworn Declaration of Jack Dyer) ¶¶ 2–3.
[2] Pl.'s Ex. B (Company Agreement) at 26.
[3] *Id.* § 4.2(a).

to fund the Company, the remaining members could admit a new capital provider, and JLR Mansions' interest would be "diluted proportionally."[4]

¶ 9.   The Agreement also ensured that this bargain would survive any change in ownership. The first page warns in bold, capital letters that "ANY SALE OR OTHER TRANSFER OF A MEMBERSHIP INTEREST IS SUBJECT TO CERTAIN RESTRICTIONS THAT ARE SET FORTH IN THIS COMPANY AGREEMENT."[5] Section 10.3 reinforces this, stating that "[e]very Transfer of a Membership Interest . . . shall be subject to all of the terms, conditions, restrictions and obligations of this Agreement."[6] Section 12.4 further confirms that the Agreement is "binding upon . . . successors and permitted assigns."[7]

**B.    RivenRock's Acquisition**

¶ 10.   In 2018, RivenRock negotiated to acquire JLR Mansions' 50% interest in Camino Real. During the negotiations, RivenRock's principals and counsel received copies of the Company Agreement on at least three occasions.[8] RivenRock therefore proceeded with full notice that the interest it was acquiring remained subject to the Agreement's terms. The transaction closed in late 2018.[9]

---

[4] *Id.* § 4.2(b).
[5] *Id.* at 1.
[6] *Id.* § 10.3.
[7] *Id.* § 12.4.
[8] Pl.'s Exs. C, E, G.
[9] Pl.'s Ex. H.

## C. The First Lawsuit

¶ 11. The honeymoon was short lived. In September 2019, RivenRock asserted that Addante and Dyer had separately agreed, through a Letter of Intent outside the Company Agreement, to grant RivenRock supermajority voting rights in Camino Real.[10] Addante and Dyer disagreed, sparking litigation in the 421st District Court of Caldwell County.[11]

¶ 12. There, the trial court initially declared that "RivenRock LLC is not bound by the terms of the [C]ompany [A]greement,"[12] but that ruling did not survive appeal. On April 30, 2025, the Third Court of Appeals reversed. The court held that the Letter of Intent was unenforceable and rendered a take-nothing judgment against RivenRock on its claims, including its requested declaration that it was not bound by the Company Agreement.[13] The appellate court also affirmed the portions of the trial court's judgment that denied Camino Real's counterclaims against RivenRock, including its requested declaration that RivenRock was bound by the terms of the Company Agreement.[14] Put simply, the appellate court vacated the trial court's declaration that RivenRock was not subject to the Company Agreement while also

---

[10] Dyer Decl. ¶¶ 14–15.

[11] *Id.* ¶¶ 15–16.

[12] Pl.'s Ex. N (Caldwell County Final Judgment) at 2.

[13] *Camino Real Devs., LLC v. Adkins*, No. 03-23-00233-CV, 2025 WL 1240787, at *11–13 (Tex. App.—Austin Apr. 30, 2025, no pet.) (mem. op.). On June 17, 2025, RivenRock filed motions for rehearing and en banc reconsideration, arguing that it was improper for the appellate court to not remand the case back to the trial court for adjudication of RivenRock's alternative theories of recovery not raised on appeal. These motions remain pending.

[14] *Id.* at *13; Def.'s Ex. A ¶ 65.

affirming the denial of the inverse declaration, leaving RivenRock without a judicial decree excusing its performance under the Agreement and Camino Real without a judicial decree compelling such performance.

**D.  The Present Dispute**

¶ 13.  Following the appeal, the controversy moved from the courtroom to the Company's checkbook. In June 2025, RivenRock announced it would stop funding the Company. In the same correspondence, it also asserted it was not bound by the Company Agreement and that its 50% interest could not be diluted.[15]

¶ 14.  This refusal had immediate, near-catastrophic consequences. The Company defaulted on its mortgage, and its managers identified urgent capital needs exceeding $6.3 million.[16]

¶ 15.  Invoking Section 4.2, the managers made a capital call.[17] When RivenRock refused to contribute, the managers admitted a new capital provider, Kyle 150, LLC ("Kyle 150"), and diluted RivenRock's interest accordingly.[18] Camino Real then filed this action to confirm the validity of the dilution.

**E.  Narrowing the Issues**

¶ 16.  Following the summary-judgment hearing on April 28, 2026, the parties entered into a Rule 11 agreement and Joint Advisory that narrowed the

---

[15] Pl.'s Ex. P.
[16] Dyer Decl. ¶ 23; Pl.'s Ex. Q (2025 Capital Call).
[17] 2025 Capital Call.
[18] Pl.'s Exs. R, W, X; *see* Dyer Decl. ¶ 32.

dispute. The parties now agree that: (a) RivenRock owns the 50% interest previously held by JLR Mansions; (b) Dyer and Addante hold the remaining 50%; (c) Dyer and Addante are the Company's sole Managers; (d) Dyer and Addante have the exclusive right to direct Camino Real's litigation of Cause No. 6648, *Permian Highway Pipeline LLC v. Camino Real Developers, LLC*, in the County Court at Law for Caldwell County (the "Pipeline Lawsuit"); and (e) RivenRock shall not attempt to participate in or interfere with the Pipeline Lawsuit.

¶ 17. Those stipulations clear away much of what was previously contested.[19] There is no longer a dispute over baseline ownership or control of the Company. The sole question is whether RivenRock's 50% interest is subject to the Company Agreement—specifically, the capital obligations and dilution provisions that defined that interest from its inception.

## STANDARD OF REVIEW

¶ 18. Summary judgment is governed by Texas Rule of Civil Procedure 166a. A movant "bears the burden to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law."[20] The nature of that burden varies by posture. A plaintiff must conclusively establish all essential elements of its

---

[19] As part of the Rule 11 agreement, Camino Real also agreed to withdraw the following requests for declaratory relief in its motion for summary judgment: (1) the declaration requested on page 19 at section (f); (2) the declaration requested on page 19 at section (g); (3) the declaration requested on page 19 at section (h); (4) the declaration requested on page 22 at section (a); (5) the declaration requested on page 22 at section (b); and (6) the declaration requested on page 22 at section (c).

[20] *ConocoPhillips Co. v. Koopmann*, 547 S.W.3d 858, 865 (Tex. 2018) (citing TEX. R. CIV. P. 166a(c)).

claim.[21] A defendant must either conclusively negate at least one element of the plaintiff's claim or prove all elements of an affirmative defense.[22]

¶ 19.  In evaluating whether a fact issue exists, a court takes as true all evidence favorable to the nonmovant, indulges every reasonable inference in the nonmovant's favor, and resolves any doubts against the movant.[23] The court may not weigh the evidence or resolve credibility determinations at this stage; its role is limited to deciding whether a genuine fact issue exists for trial. [24]

¶ 20.  Questions of contract interpretation are especially well suited for summary judgment.[25] In construing a contract, the Court's objective is to ascertain and give effect to the parties' intent as expressed in the agreement itself. [26] To do so, the Court considers the contract as a whole, harmonizing and giving effect to all provisions so that none are rendered meaningless.[27]

¶ 21.  This analysis begins—and, if possible, ends—with the contract's plain language.[28] If the language is susceptible to a definite or certain legal interpretation,

---

[21] *See MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986) (per curiam).

[22] *Stanfield v. Neubaum*, 494 S.W.3d 90, 96 (Tex. 2016).

[23] *ConocoPhillips*, 547 S.W.3d at 865.

[24] *Huckabee v. Time Warner Ent. Co. L.P.*, 19 S.W.3d 413, 422–23 (Tex. 2000); *see also Ortega v. Pean*, No. 01-18-00249-CV, 2019 WL 1560859, at *10 (Tex. App.—Houston [1st Dist.] Apr. 11, 2019, pet. denied) (mem. op.) ("[I]f a summary judgment motion involves the credibility of affiants, or the weight to be given to evidence, the motion should not be granted." (internal quotation marks omitted)).

[25]  *See Hallmark v. Port/Cooper-T. Smith Stevedoring Co.*, 907 S.W.2d 586, 590 (Tex. App.—Corpus Christi-Edinburg 1995, no writ); *Tellepsen Builders, L.P. v. Kendall/Heaton Assocs., Inc.*, 325 S.W.3d 692, 696 (Tex. App.—Houston [1st Dist.] 2010, pet. denied).

[26]  *Italian Cowboy Partners v. Prudential Ins.*, 341 S.W.3d 323, 333 (Tex. 2011); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003).

[27] *Italian Cowboy*, 341 S.W.3d at 333.

[28] *Id.* (citing *Progressive Cnty Mut. Ins. Co. v. Kelley,* 284 S.W.3d 805, 807 (Tex. 2009) (per curiam)).

it is unambiguous and must be enforced as written.[29] If, on the other hand, the contract is susceptible to more than one reasonable interpretation, it is ambiguous.[30] Only in that circumstance may the court consider extraneous evidence "to determine the true meaning of the instrument."[31]

¶ 22. These principles apply with equal force to limited liability company agreements.[32] Such agreements govern an LLC's internal affairs and may include "any provisions for the regulation and management" of the LLC's affairs that are not inconsistent with law.[33] The Court construes such agreements as a whole and gives their terms their plain, ordinary, and accepted meanings unless the agreement itself indicates a different or technical usage.[34]

## ANALYSIS
## PART ONE: RIVENROCK'S RES JUDICATA DEFENSE FAILS

**A. The prior litigation did not establish that RivenRock is free from the Company Agreement.**

¶ 23. Before reaching the merits, the Court must first address RivenRock's preclusion defense. RivenRock argues that this lawsuit is an attempt to relitigate

---

[29] *J.M. Davidson*, 128 S.W.3d at 229; *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983).

[30] *Italian Cowboy*, 341 S.W.3d at 333 (citing *J.M. Davidson*, 128 S.W.3d at 229).

[31] *Id.* at 333–34 (quoting *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450–51 (Tex. 2008) (per curiam)).

[32] *Bay Area RV Parks, L.L.C. v. WGB RV Parks, LLC*, No. 01-21-00085-CV, 2023 WL 2248738, at *6 (Tex. App.—Houston [1st Dist.] Feb. 28, 2023, pet. denied) (mem. op.) (citing *Abdullatif v. Choudhri*, 561 S.W.3d 590, 609–10 (Tex. App.—Houston [14th Dist.] 2018, pet. denied)).

[33] TEX. BUS. ORGS. CODE § 101.052(a), (d); *Bay Area RV Parks, L.L.C.*, 2023 WL 2248738, at *6.

[34] *See Bay Area RV Parks, L.L.C.*, 2023 WL 2248738, at *6 (citing *URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 764 (Tex. 2018)).

issues resolved in the Caldwell County litigation.[35] That argument, however, depends on an inaccurate characterization of what the prior case actually decided.

¶ 24. The earlier litigation centered on RivenRock's contention that separate side agreements—a "Recap" email and a Letter of Intent—superseded the Company Agreement and granted RivenRock supermajority voting rights in Camino Real.[36] The trial court accepted that theory and declared that RivenRock "is not bound by the terms of the [C]ompany [A]greement."[37]

¶ 25. The Third Court of Appeals disagreed, holding that the alleged side agreements were unenforceable and reversing the declaratory relief entered in RivenRock's favor. The court explained:

> Camino Real contends that the trial court erred by awarding relief declaring that RivenRock is not bound by the Camino Real Company Agreement. We reverse this declaratory relief for the same reasons we reversed the others above—without a successful underlying claim, Adkins and RivenRock are not entitled to any of the other declaratory relief awarded by the judgment and that is challenged in this appeal.[38]

¶ 26. That reversal is dispositive of much of RivenRock's preclusion theory. Res judicata and collateral estoppel apply only to final judgments and final

---

[35] Def.'s Resp. ¶¶ 4–5.

[36] *See* Def.'s Ex. B ¶¶ 62–68, 71–76, 79–84; *see also Camino Real Devs., LLC*, 2025 WL 1240787, at *11 ("[M]uch of the relief awarded by the [trial court's] judgment depends on the existence and enforceability of the Contract. Therefore, in addition to reversing the portion of the judgment granting judgment on the Contract, we also reverse the portions of the judgment that (a) declare that RivenRock 'is entitled to a 2/3 dictating vote over financial and larger operational matters of' Camino Real . . . .").

[37] Caldwell County Final J. at 2.

[38] *Camino Real Devs., LLC*, 2025 WL 1240787, at *12.

determinations.[39] A ruling reversed on appeal is a legal nullity; it carries no preclusive effect.[40] Once the appellate court reversed the declaration that RivenRock was not bound by the Company Agreement, the prior litigation no longer established any such proposition.

¶ 27.  At most, the prior litigation conclusively established that RivenRock owns a 50% interest in Camino Real.[41] It did not finally determine the nature of that interest, whether the interest remains governed by the Company Agreement, or whether the interest remains subject to dilution under Section 4.2(b).

**B.  This lawsuit also involves different claims, theories, and operative facts.**

¶ 28  Even apart from the appellate reversal, res judicata would still not apply. Texas follows the transactional approach to claim preclusion, which bars not only claims actually litigated, but also claims that could have been litigated in the prior action through the exercise of diligence.[42]  That doctrine, however, does not extend to materially different legal theories or claims arising from later-occurring facts.[43]

---

[39] *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996) (res judicata); *see In re USAA Gen. Indem. Co.*, 629 S.W.3d 878, 883–84 (Tex. 2021) (collateral estoppel).

[40] *See WWLC Inv., L.P. v. Miraki*, No. 05-20-00552-CV, 2023 WL 1097558, at *3 (Tex. App.—Dallas Jan. 30, 2023, no pet.) (mem. op.) (citing *Scurlock Oil Co. v. Smithwick*, 724 S.W.2d 1, 6 (Tex. 1986)).

[41] *Camino Real Devs., LLC*, 2025 WL 1240787, at *13 ("We affirm the portions of the trial court's judgment that declare 'that RivenRock LLC owns a 50% membership interest in Camino Real Developers, LLC . . . .'").

[42] *Rosetta Res. Operating, LP v. Martin*, 645 S.W.3d 212, 225 (Tex. 2022).

[43] *Marino v. State Farm Fire & Cas. Ins. Co.*, 787 S.W.2d 948, 949–50 (Tex. 1990); *see Hallco Tex., Inc. v. McMullen Cnty.*, 221 S.W.3d 50, 58 (Tex. 2006); *Brown v. Lanier Worldwide, Inc.*, 124 S.W.3d 883, 905–06 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

¶ 29.  The operative facts here arose years after the first case was resolved. The prior case was tried in December 2022. The events giving rise to this dispute—the 2025 capital call, RivenRock's refusal to fund, the admission of Kyle 150, and the resulting dilution—had not yet occurred. Res judicata does not bar claims based on facts that did not yet exist, nor does it require parties to litigate hypothetical future disputes before they arise.[44] Camino Real therefore was not required, during the earlier litigation, to seek advance declarations regarding the consequences of a future refusal to fund capital calls that had not yet been made.

¶ 30.  The legal theory at issue here is also materially different. The prior litigation focused on whether a separate side agreement displaced the Company Agreement and whether RivenRock could be personally liable for breach of that Agreement. The present case, on the other hand, concerns the legal characteristics of the ownership interest RivenRock acquired and the consequences that flowed from later events occurring in 2025.

¶ 31.  More specifically, Camino Real contends that the 50% interest RivenRock acquired came with certain built-in characteristics from the moment of acquisition, including exposure to dilution under Section 4.2(b).[45] In Camino Real's

---

[44] *See Genecov Grp. v. Roosth Prod. Co.*, 144 S.W.3d 546, 554 (Tex. App.—Tyler 2003, pet. denied) ("Causes of action which could not have accrued at the time of a previous suit are not barred by the principle of res judicata."); *see also Hernandez v. Del Ray Chem. Int'l, Inc.*, 56 S.W.3d 112, 116 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (res judicata does not bar claims where, "in the interval, the facts have changed, or new facts have occurred which may alter the legal rights or relations of the parties").

[45] Pl.'s Mot. at 25–28.

view, those characteristics attach to the interest itself regardless of whether RivenRock may also face personal contractual liability.[46]

¶ 32. A familiar analogy illustrates the point.[47] When a buyer acquires property subject to a mortgage, two distinct questions arise: whether the buyer personally assumed the debt and whether the property itself remains subject to the lien. Even if the buyer never assumes personal liability on the note, the property may still be foreclosed upon if the debt goes unpaid. In that sense, the lien is said to "run with the land."[48]

¶ 33. The same logic applies here. Whether RivenRock may be personally liable for breach of the Company Agreement is analytically distinct from whether the interest it acquired remains subject to the Agreement's dilution provisions. The authorities cited by RivenRock do not compel a different result because they involve parties attempting to relitigate the same claims under different labels.[49] This case does not. The theory is different, the facts are different, and the practical stakes are different.

---

[46] *Id.* at 26–27.

[47] *See id.* at 7.

[48] *See Weatherford v. Nat'l Life Ins. Co.*, 94 S.W.2d 250, 254 (Tex. App.—Dallas 1936, writ dism'd) ("If the purchaser of the property assumed the payment of the mortgage, or takes the property 'subject to' the mortgage, in either case, he takes the land charged with the payment of the debt, and is not allowed to set up any defense to its validity.").

[49] *See Duncan v. Hindy*, 590 S.W.3d 713, 722 (Tex. App.—Eastland 2019, pet. denied); *Hill v. Tx-An Anesthesia Mgmt., LLP*, 443 S.W.3d 416, 425–26 (Tex. App.—Dallas 2014, no pet.).

## C. Collateral estoppel does not apply.

¶ 34. RivenRock's collateral-estoppel argument fares no better. Issue preclusion applies only when the identical issue has been actually litigated and finally decided in a prior proceeding.[50]

¶ 35. That never happened here. The only court to expressly declare that RivenRock was free from the Company Agreement was the trial court, and that ruling did not survive appeal. The Third Court of Appeals reversed it and did not substitute any holding that RivenRock was exempt from the Agreement. As a result, there is no final adjudication resolving the issue before this Court. The slate is clean.

## ANALYSIS
## PART TWO: THE COMPANY AGREEMENT GOVERNS

## A. An LLC membership interest is inseparable from the agreement defining it.

¶ 36. With the preclusion issues resolved, the Court turns to the central question in the case. RivenRock's position ultimately rests on a single, paradoxical premise: that it may claim the benefits of owning a 50% interest in Camino Real while disclaiming the very Agreement that defines what the interest is. According to RivenRock, because it did not originally sign the Company Agreement or separately

---

[50] *In re USAA Gen. Indem. Co.*, 629 S.W.3d at 883 (citing *Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 384 (Tex. 1985)).

vote to adopt it, the Agreement's burdens—most notably the dilution provisions—do not apply to it.[51]

¶ 37. That argument misunderstands the nature of an LLC membership interest. A membership interest is not a free-standing asset that exists independently of the company's governing documents.[52] It is a creature of contract:[53] a defined bundle of rights, obligations, and conditions. The Company Agreement identifies the members, defines their ownership percentages, allocates management authority, governs distributions, and establishes the consequences of failing to meet capital obligations. Without the Agreement, there is no way to know what "50% owner" actually means.

¶ 38. RivenRock's theory would require the Court to view a membership interest as a cafeteria plan from which a transferee may pick and choose. Under this approach, a party could claim a right to 50% of the profits (created by the Agreement) while rejecting the duty to fund capital calls (also created by the Agreement). Texas law does not permit that sort of selective acceptance. A party cannot claim the

---

[51] Def.'s Resp. ¶ 44; Pl.'s Exs. O, P.

[52] *See* TEX. BUS. ORGS. CODE § 101.052(a)(1) ("[T]he company agreement of a limited liability company governs: (1) the relations among members, managers, and officers of the company, assignees of membership interests in the company, and the company itself . . . ."); *id.* § 101.052(g) ("[A]n assignee of a membership interest of a limited liability company[] is bound by the company agreement, regardless of whether the . . . assignee signs the company agreement."); *Lion Copolymer Holdings, LLC v. Lion Polymers, LLC*, 614 S.W.3d 729, 731 (Tex. 2020) (per curiam) (explaining that LLC agreement created membership interests at issue).

[53] *See Bay Area RV Parks, L.L.C.*, 2023 WL 2248738, at *6.

benefits of a contract while simultaneously disclaiming the obligations attached to those rights.[54]

## B. The Company Agreement defines the capital-provider interest as both a benefit and a burden.

¶ 39. The Company Agreement confirms that these rights and obligations travel together. The Agreement creates two functionally distinct categories of ownership. One is the capital provider—the party responsible for funding the Company's capital needs.[55] The other consists of non-capital providers, who are not obligated to supply capital and instead contribute other forms of value to the enterprise (e.g., industry expertise and construction know-how).[56] At formation, JLR Mansions held the 50% capital-provider interest, while Addante and Dyer held the remaining interests.

¶ 40. Section 4.2 defines the capital-provider interest through a paired set of provisions. Subsection (a) requires the capital provider to "be responsible for any additional Capital Contributions" and to "fund any and all debt service." Subsection (b) then provides that if the capital provider fails to fulfill those obligations, the

---

[54] *Vessels v. Anschutz Corp.*, 823 S.W.2d 762, 766 (Tex. App.—Texarkana 1992, writ denied) ("One who retains benefits under a transaction cannot avoid its obligations . . . ."); *Sanchez v. Leggett*, 463 S.W.2d 517, 522 (Tex. App.—Corpus Christi 1971, writ ref'd n.r.e.); *Terrazas v. Carroll*, 277 S.W.2d 274, 277 (Tex. App.—Eastland 1955, no writ) ("It is a well settled general rule that one who accepts the benefits of a contract must also assume its burdens.").
[55] *See* Company Agreement § 4.2.
[56] *See id.* § 4.1.

Company may admit a new capital provider, and the existing capital provider's interest "shall be diluted proportionally."

¶ 41.  Those provisions operate together.[57] The obligation to fund capital and the risk of dilution are not separate concepts accidentally placed in neighboring subsections. They are corresponding features of the same ownership interest. One defines the benefit of holding the capital-provider position; the other defines the consequence of failing to perform it.

**C.      The dilution mechanism runs with the interest upon transfer.**

¶ 42.  The parties have stipulated that RivenRock acquired the 50% interest previously held by JLR Mansions. The question is whether that interest changed character when it passed to a new owner. The Court concludes it did not.

¶ 43.  It is a basic tenet of property law that a buyer acquires no greater rights than the seller possessed.[58] JLR Mansions held a 50% interest subject to dilution under Section 4.2(b). It could no more transfer that interest free of that characteristic than a property owner could convey mortgaged land free of the mortgage lien. The restriction travels with the property.

---

[57] *See Italian Cowboy*, 341 S.W.3d at 333 (holding that, in interpreting contracts, provisions must be harmonized and given effect so none are rendered meaningless).

[58] *See Myers-Woodward, LLC v. Underground Servs. Markham, LLC*, 716 S.W.3d 461, 469 (Tex. 2025) ("It is axiomatic that 'a grantor cannot convey to a grantee a greater or better title than [he] holds.'" (alteration in original)); *Travis Cent. Appraisal Dist. v. Signature Flight Support Corp.*, 140 S.W.3d 833, 843 (Tex. App.—Austin 2004, no pet.) ("Regardless of such language in the subleases, Signature and Austin Aero, as non-owners of the facilities and mere lessors from the City, could not have conveyed or assigned to Triple S and R & J any rights or interests greater than those they possessed." (citing *Collora v. Navarro*, 574 S.W.2d 65, 70 (Tex. 1978))).

¶ 44. The Company Agreement makes this explicit. Section 10.3 provides that "[e]very Transfer of a Membership Interest . . . shall be subject to all of the terms, conditions, restrictions and obligations of this Agreement." Section 12.4 likewise makes the Agreement "binding upon . . . successors and permitted assigns." These are not aspirational statements or incidental boilerplate. They are operative terms defining what happens when an ownership interest changes hands: the Agreement follows the interest.

¶ 45. The Agreement's front-page warning reinforces the point. In bold language, it states that transfers are "SUBJECT TO CERTAIN RESTRICTIONS." RivenRock and its counsel received the Agreement multiple times before closing. The notion that the interest arrived free of contractual limitations is therefore impossible to reconcile with either the Agreement's text or the transaction itself.

¶ 46. To be clear, the Court does not decide today whether RivenRock is personally liable for breach of the Company Agreement. The Court holds only that the interest RivenRock acquired remains subject to the Agreement's terms, including Section 4.2(b). Whether RivenRock separately consented to the Agreement as a signatory misses the point. What matters is the nature of the interest it purchased.

**D.     The dilution provisions were properly applied in 2025.**

¶ 47.  The events of 2025 unfolded precisely as Section 4.2 contemplates. After RivenRock stopped funding the Company's obligations, the Company defaulted on its mortgage and faced capital needs exceeding $6.3 million. The managers issued a capital call under Section 4.2(a). RivenRock refused to fund it.

¶ 48.  At that point, Section 4.2(b) authorized the Company to admit a new capital provider and to proportionally dilute the existing capital provider's interest. The managers exercised that authority by admitting Kyle 150.

¶ 49.  This was not an improvised penalty or an extra-contractual remedy. It was the mechanism the parties built into the Agreement from the beginning. Section 4.2(b) identifies both the triggering event—the capital provider's failure to fund— and the contractual consequence—admission of a replacement capital provider accompanied by proportional dilution.

¶ 50.  RivenRock's contrary interpretation would effectively erase Section 4.2 from the Agreement. A capital obligation that may be ignored without consequence, and a dilution provision enforceable only with the diluted party's consent, would have no practical operation at all. Courts do not interpret contracts in a manner that renders operative provisions meaningless.[59]

---

[59] *See Italian Cowboy*, 341 S.W.3d at 333.

**E.      The 2023 statutory amendment does not alter the analysis.**

¶ 51.   In defense of its position, RivenRock points to the 2023 enactment of Texas Business Organizations Code § 101.052(g), which expressly states that LLC members and assignees of LLC membership interests are bound by company agreements regardless of whether they signed them. According to RivenRock, the Legislature would not have enacted that provision unless Texas law previously provided otherwise.[60]

¶ 52.   This argument is unpersuasive. For one, legislatures routinely codify principles already reflected in common law or existing contractual practice, whether to promote uniformity or resolve uncertainty at the margins.[61] The existence of a statute therefore does not imply that no such principle previously applied. To the contrary, statutory enactments frequently serve a clarifying or confirmatory function rather than creating entirely new legal rules from whole cloth. The Texas Legislature did so just last year when it codified the longstanding business judgment rule.[62]

¶ 53.   Second, and more fundamentally, the Court's decision does not depend on the statute. The Court bases its decisions on the language of *this* Company

---

[60] Def.'s Resp. ¶ 44.
[61] *See, e.g.*, TEX. BUS. ORGS. CODE § 21.419 (codifying business judgment rule); TEX. BUS. & COM. CODE § 27.01 (codifying cause of action for fraud in real-estate and stock transactions); TEX. CIV. PRAC. & REM. CODE ch. 33 (codifying proportionate responsibility and abrogating common-law unlawful acts doctrine).
[62] TEX. BUS. ORGS. CODE § 21.419 (codifying business judgment rule).

Agreement—language that expressly provides that every transfer is "subject to all of the terms, conditions, restrictions and obligations" of the Agreement. That provision was agreed to by the original parties and governs successor holders as a characteristic of the interest being transferred. No resort to a general statutory rule is necessary when the Agreement's own terms accomplish the same result.

## F.     RivenRock does not own the Company's underlying assets.

¶ 54.  Finally, RivenRock's assertion that it owns "an undivided 50%" of Camino Real's assets[63] is legally incorrect. Under Texas law, a membership interest in an LLC is personal property.[64] It does not confer on the member any direct ownership of the entity's assets.[65] The Company owns its property,[66] enters into its contracts, and bears its liabilities. Members own interests in the entity—not fractional interests in the entity's underlying assets.

¶ 55.  That separation is essential to the LLC form. It preserves the entity's independence, protects its creditors, and allows ownership interests to be transferred without fragmenting title to the Company's assets. If every transfer of a membership interest also necessitated a transfer of a fractional ownership interest

---

[63] Pl.'s Ex. O.

[64] TEX. BUS. ORGS. CODE § 101.106(a); *Sohani v. Sunesara*, 546 S.W.3d 393, 404 (Tex. App.—Houston [1st Dist.] 2018, no pet.).

[65]  TEX. BUS. ORGS. CODE § 101.106(b); *Pajooh v. Royal W. Invs. LLC, Series E*, 518 S.W.3d 557, 565 (Tex. App.—Houston [1st Dist.] 2017, no pet.).

[66] *See* Company Agreement § 2.5 ("All Company Property shall be deemed owned by the Company as an entity, and no Member, individually, shall have any ownership of that property.").

in every Company asset, it would create chaos in title, make it difficult for the Company to conduct business, and undermine the very purpose of operating as a separate legal entity.

## THE COURT'S DECLARATIONS

¶ 56. Based on the foregoing, the Court issues the following declarations regarding the parties' rights and obligations under the Company Agreement:

   a.   The Company Agreement governs all ownership interests in Camino Real, including the 50% interest currently held by RivenRock. The rights, obligations, restrictions, and limitations associated with those interests are defined by the Company Agreement and apply to successor holders upon transfer.

   b.   The Company Agreement establishes two functionally distinct categories of ownership interests: (a) the capital-provider interest, representing 50% of the Company's equity, which carries the obligation to fund the Company's capital needs and is subject to dilution under Section 4.2(b) upon failure to do so; and (b) the non-capital provider interests, representing the remaining 50% of the Company's equity, which are not subject to dilution under Section 4.2(b).

c. JLR Mansions originally held the capital-provider interest. When that interest transferred to RivenRock on or about October 31, 2018, it transferred subject to all terms, conditions, restrictions, and obligations of the Company Agreement. RivenRock therefore acquired the interest as it existed, including exposure to dilution under Section 4.2(b).

d. Section 4.2(b) authorizes Camino Real, acting through its managers, to admit a new capital provider and proportionally dilute the existing capital-provider interest if required capital contributions are not made. That provision applies to successor holders of the capital-provider interest, including RivenRock.

e. RivenRock's interest has at all times remained subject to Section 4.2(b). The applicability of that provision does not depend on whether RivenRock separately executed the Company Agreement or may be personally liable for its breach.

f. The admission of Kyle 150 as a new capital provider, and the resulting dilution of RivenRock's interest, were authorized by and consistent with Section 4.2(b) of the Company Agreement.

g. Any additional capital contributions made pursuant to Section 4.2(b) may further proportionally dilute the capital-provider

interest in accordance with the terms of the Company Agreement.

h.      RivenRock does not own an undivided interest in Camino Real's assets. RivenRock's rights are limited to those associated with the interest it acquired, as defined by the Company Agreement.

**CONCLUSION**

¶ 57.  For these reasons, Camino Real Developers, LLC's Traditional Motion for Summary Judgment is **GRANTED**. The Court enters the declarations set forth above. All other relief requested by Camino Real and not otherwise addressed herein is **GRANTED** to the extent consistent with this Opinion and Order.

¶ 58.  RivenRock's affirmative defense of res judicata is **OVERRULED**.

¶ 59.  RivenRock's evidentiary objections are **OVERRULED**.

IT IS SO ORDERED.

_____
BRIAN STAGNER
Judge, Texas Business Court,
Eighth Division


DATED: May 15, 2026